## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 12-cr-45 (SRN/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Sheikh Bilaal Muhammad Arafat, | |
| Defendant. | |

Deidre Y. Aanstad and Kevin S. Ueland, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America.

Sheikh Bilaal Muhammad Arafat, Sherburne County Jail, 13880 Business Center Drive NW, Elk River, Minnesota 55330, Pro Se.

Jordan Kushner, Law Office of Jordan S. Kushner, 431 South Seventh Street, Suite 2446, Minneapolis, Minnesota 55415, Standby Counsel for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter came before the undersigned United States District Judge on

Defendant's[1] Motion to Withdraw His Plea(s) Pursuant to Fed. R. Crim. P. 11(d)(2)(B) and

11(d)(1) and Recusal of District Judge Susan Richard Nelson [Doc. Nos. 427, 428].[2]  In

2012, Defendant was indicted on thirteen counts of armed bank robbery in violation of 18

---

[1]    Defendant has been proceeding pro se, with the assistance of standby counsel, in this case since September 2012 [Doc. No. 73].
[2]    Defendant filed the same document as Docket Nos. 427 and 428.  For purposes of its analysis, the Court cites only to Docket No. 428.

U.S.C. § 2113(a) and (d).  He has since entered two guilty pleas in this case.  On April 22,

2013, Defendant pled guilty to Count 1 of the thirteen-count indictment without the benefit

of a plea agreement with the Government.  On May 6, 2013, Defendant pled guilty to

Counts 3, 4, 7, 10, and 12 pursuant to a plea agreement.  Defendant now seeks to withdraw

both pleas pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  He also seeks

recusal of the undersigned.  For the reasons set forth below, Defendant's motions are

denied.

## II.      MOTION TO WITHDRAW GUILTY PLEA TO COUNT 1

Defendant seeks to withdraw the guilty plea that he entered on April 22, 2013, to

Count 1 of the indictment in this case pursuant to Federal Rule of Criminal Procedure

11(d)(2)(B).  Under that rule, a defendant may withdraw a guilty plea "after the court

accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just

reason for requesting withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  There is no dispute that

the Court accepted Defendant's plea as to Count 1 prior to Defendant filing his motion to

withdraw.  Thus, the only issue is whether Defendant has shown a fair and just reason for

requesting withdrawal, and Defendant bears the burden.  See United States v. Norvell, 729

F.3d 788, 792 (8th Cir. 2013).

"While the standard is liberal, the defendant has no automatic right to withdraw a

plea."  United States v. Ramirez-Hernandez, 449 F.3d 824, 826 (8th Cir. 2006) (citation

omitted).  Even if the defendant can establish a fair and just reason, "[the] court must

consider 'whether the defendant asserts his innocence of the charge, the length of time

between the guilty plea and the motion to withdraw it, and whether the government will be

2

prejudiced if the court grants the motion.'" Id. (quoting United States v. Nichols, 986 F.2d 1199, 1201 (8th Cir. 1993)).  As noted by the Eighth Circuit, "'[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same.'"  United States v. Lawhorn, 735 F.3d 817, 820 (8th Cir. 2013) (citations omitted). Thus, "'[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise.'"  United States v. Goodson, 569 F.3d 379, 382 (8th Cir. 2009) (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)).

The change of plea hearing regarding Count 1 in this matter occurred on April 22, 2013.  At that hearing, the Court completed a thorough Rule 11 plea colloquy by advising and questioning Defendant in regard to the rights he would give up in entering a guilty plea, (see Tr. of Change of Plea Hr'g, dated Apr. 22, 2013 [Doc. No. 394] ("Apr. Tr."), at 12:5–17:12); determining that there was a factual basis for the plea, (id. at 17:13–21:9); and finding that Defendant was entering the plea voluntarily, (id. at 21:17–23:21).  Defendant then pled guilty, and the Court accepted his plea.  (Id. at 28:17–29:5.)  Yet, Defendant now puts forth several reasons that he claims warrant the withdrawal of his guilty plea.  None of these reasons are sufficient to support his motion.  Moreover, even if Defendant could establish a fair and just reason, the Court finds that other relevant considerations weigh against allowing withdrawal in this case.

### A.    Alleged Fair and Just Reasons

### 1.    Originally proclaimed innocence

First, Defendant asserts that he is entitled to withdraw his plea based on "originally

proclaimed innocence." (Def.'s Reply Mot. to the Govt.'s Opp. Mot. as a Result of the

Def.'s Mot. to Withdraw His Guilty Pleas and Recusal of Judge Nelson [Doc. No. 456]

("Def.'s Reply"), at 5.) Defendant states that, although he admits to robbing the Brewster

Bank in violation of 18 U.S.C. § 2113(a) as alleged in Count 1, he has been "steadfast in his

innocence" of culpability under § 2113(d). (Id.) In explaining his guilty plea, he claims:

> Sheikh Arafat instinctively pled guilty to §2113(d) without involving reason;
> originating below his conscious level as a result of his "temporal illusions"—
> the inability to exercise the power of reasoning when under duress or when
> experiencing an inrush of stimuli (i.e., the Government's powerful influence
> and coercion.)

(Id. at 6 (emphases and brackets omitted).)

The Court finds that Defendant's own statements at the change of plea hearing

plainly contradict the notion that he has maintained his innocence under § 2113(d) or that

his plea was based on coercion by the Government:

> THE DEFENDANT:  I would like to proceed with a plea hearing.
>
> THE COURT:  And are you going to be able to tell me truthfully under oath
> that you are making that plea voluntarily, that you are not feeling any
> coercion from any source?
>
> THE DEFENDANT:  I will, Judge Nelson. There is, however, an implied—I
> mean I think just the nature of a judicial proceeding, there's some inherent—
> the way I view it, I don't feel that there's been this complete travesty of
> misjustice. I think just by the nature of the proceeding, there's this implied or
> inherent coercion that if a guilty plea is not tendered that perhaps somebody
> could face additional years in prison. And you and the Court as a whole has
> been clear to me that by proceeding pro se, by the fact that I'm proceeding

with a trial which is constitutionally afforded to me, that I do face, as [has] been said to me, a lifetime in prison, potentially.

As I have said earlier, I have accepted responsibility for Count 1 of this Indictment from the get-go, if you will.  My issue has been with the 2113(d) aspect where statutorily it states, "Did you deliberately assault somebody or did you knowingly put the life in jeopardy of another person by the use of a dangerous weapon," and I disagree with that.  However, objectively speaking, from a bank teller's perspective, if objectivity is called into play to define that assault or "put into jeopardy," I did do that, then I'm guilty of that, regardless of my intention—

THE COURT:  You appreciate that assault is not a physical act necessarily; it can be a verbal act.

THE DEFENDANT:  I understand that.  And again, with that being said, there were no verbal threats made or terroristic threats made to this teller.  But regardless, I shouldn't have walked into that bank with a toy gun, and I'm guilty of that crime.  And if that—again, if there's some objectivity to come into play within terms of a definition, <u>I clearly recognize I could be found guilty of 2113(d).  So with that being said, I'm proceeding to voluntarily and fully, without any other outside forces or coercion, plead guilty as charged.</u>

(Apr. Tr. 4:16–6:5 (emphasis added).)  Thus, Defendant has not steadfastly maintained his innocence as to § 2113(d).  Rather, he clearly and knowingly admitted his guilt to Count 1, including to the extent that it was based on § 2113(d).  Therefore, Defendant's "originally proclaimed innocence" reason is insufficient to support withdrawal of his plea.

## 2.   No meaningful access to legal resources

Second, Defendant asserts that his guilty plea to Count 1 was not entered knowingly, voluntarily, or intelligently because he did not have "meaningful access" to legal resources. (Def.'s Mot. to Withdraw His Plea(s) Pursuant to Fed. R. Crim. P. Rule 11(d)(2)(B) and 11(d)(1) and Recusal of District Judge Susan Richard Nelson [Doc. No. 428] ("Def.'s Mot."), at 7; Def.'s Reply at 6.)  Defendant states that both the legal resources to which he

had access and the performance of his standby counsel were inadequate,[3] leading to his

inability to prepare his defense, understand the charges against him, and understand his

waiver of appellate rights upon pleading guilty. (See Def.'s Mot. at 7, 12–13; Def.'s Reply

at 6–14.)

 While Defendant complains that the legal resources available to him at the Sherburne

County Jail are inadequate to prepare a defense for a federal criminal trial, (Def.'s Reply at

8–9), Defendant was transferred to Sherburne County Jail at his request because it was

better equipped with federal legal materials. And, a pretrial detainee who exercises his

constitutional right to represent himself at trial is not entitled to access to legal resources

above what is afforded to the general population of the institution in which he is detained.

See United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999). In addition, having chosen to

represent himself, Defendant cannot rely on an assertion that his standby counsel is

inadequate, because Defendant has no constitutional right to standby counsel. See United

States v. Foster, 230 F.3d 1364, 2000 WL 1511762, at *1 (8th Cir. 2000) (citation omitted)

(stating that, because the criminal defendant had no constitutional right to standby counsel,

the defendant could not claim ineffective assistance of standby counsel). Finally, even if it

were true that Defendant misunderstood the law when he entered his guilty plea—which is

flatly contradicted by Defendant's statements at the change of plea hearing, (see Apr. Tr.

5:9–6:5, 15:9-22)—an alleged misunderstanding of the law does not demonstrate that a plea

---

[3] Defendant also alleges vaguely that his standby counsel "has a relationship with an individual whom [Defendant] has lodged a federal complaint against," thereby creating a conflict of interest. (Def.'s Mot. at 13 (emphasis omitted).) Defendant provides no further details or support for his allegation. Therefore, the Court declines to address the issue.

was involuntary where a defendant has elected to represent himself.  See United States v. Johnson, 715 F.3d 1094, 1103 (8th Cir. 2013).  Therefore, Defendant's "lack of meaningful access to legal resources" reason is insufficient to support withdrawal of his plea.

### 3.     Desire to preserve appellate rights

Third, Defendant argues that his desire to preserve his appellate rights warrants his withdrawal of the guilty plea.  (Def.'s Reply at 13.)  Defendant asserts that there was no discussion during the April 22, 2013, plea hearing regarding waiver of his appeal rights and, therefore, that he believed the following rights were preserved:  to review whether his conduct violated 18 U.S.C. § 2113(d); to review whether law enforcement had a reasonable suspicion to perform a traffic stop of his vehicle; to challenge the constitutionality of the search of his vehicle; to review whether his right to counsel was violated during a police interrogation; to review whether his right to be brought before a magistrate judge without unreasonable delay was violated and whether any evidence obtained as a result of the delay must be suppressed; and to review whether his right to a speedy trial was violated.  (Id. at 13–17.)

Defendant's argument lacks merit.  While the Court is obligated pursuant to Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure to inform a defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," Defendant did not enter into a plea agreement as to Count 1.  Nor did he enter a conditional plea, which would have allowed him to reserve his appellate rights as to specific pretrial motions.  See Fed. R. Crim. P. 11(a)(2).  Therefore, Defendant did not preserve the

appellate rights he seeks,[4] and the Court was not obligated to recite the appellate rights that Defendant waived.  Accordingly, Defendant's "desire to preserve appellate rights" reason is insufficient to support withdrawal of his plea.

### 4.      Lack of factual basis

Fourth, Defendant asserts that the Court failed to establish a factual basis for 18 U.S.C. § 2113(f), an element of Count 1.  (Def.'s Reply at 17.)  Specifically, Defendant states that the indictment describes the Rolling Hills Bank and Trust at issue in Count 1 as being located in Brewster, Minnesota, but that Defendant received a Federal Deposit Insurance Corporation ("FDIC") certificate from the Government describing a Rolling Hills Bank and Trust located in Atlantic, Iowa.  (Id.)  The element which Defendant states remains unsatisfied reads as follows:

> (f) As used in this section the term "bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, including a branch or agency of a foreign bank . . . ,

---

[4]      Indeed, Defendant is entitled to no such appellate rights.  "'It is well established in this Circuit that a defendant who pleads guilty waives all nonjurisdictional defenses.'" United States v. Villa-Madrigal, 683 F.3d 924, 926 (8th Cir. 2012) (citation omitted).  "In order to establish a jurisdictional defect, [the defendant] must show that the indictment on its face fails to state an offense." O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988) (citation omitted).  Defendant has not asserted—let alone demonstrated—that the indictment in this case was facially invalid.  Rather, the issues he raises relate to suppression, search and seizure, the privilege against self-incrimination, and the right to a speedy trial—none of which are jurisdictional.  See Villa-Madrigal, 683 F.3d at 926 (suppression); Smith v. United States, 876 F.2d 655, 657 (8th Cir. 1989) (search and seizure and the privilege against self-incrimination); Becker v. Nebraska, 435 F.2d 157, 157 (8th Cir. 1970) (speedy trial).  As for Defendant's asserted belief that he preserved the right to appellate review of whether his conduct violated 18 U.S.C. § 2113(d), Defendant clearly and knowingly admitted his guilt under § 2113(d) at the change of plea hearing, as discussed above.

and any institution the deposits of which are insured by the Federal Deposit
Insurance Corporation.

18 U.S.C. § 2113(f).  Presumably, therefore, Defendant believes that there is no factual

basis for the charge that the deposits of the Rolling Hills Bank and Trust in Brewster,

Minnesota, are insured by the FDIC.

The Court finds that the factual basis for Count 1, including that the robbery

occurred at the Rolling Hills Bank and Trust in Brewster, Minnesota, and that the money

located therein was insured by the FDIC, was established at the change of plea hearing.  Not

only did the Court review Count 1 with the Defendant, including an identification of the

bank as the "Rolling Hills Bank and Trust located in Brewster, Minnesota, the deposits of

which were then insured by the [FDIC]," (Apr. Tr. 15:14-16), but the Government also

stated its intent to prove through witnesses and physical evidence that Defendant robbed the

"Rolling Hills Bank and Trust in Brewster, Minnesota," (id. at 17:16-20).  In response,

Defendant stated that he understood the charge.  (Id. at 15:20-22.)  He also admitted that he

did in fact commit the alleged acts at the Rolling Hills Bank and Trust in Brewster,

Minnesota, (id. at 19:5–21:7), and that he understood that the deposits therein were federally

insured through the FDIC, (id. at 20:8-12).  Whether the Government at some point

produced a document associating the Rolling Hills Bank and Trust with Atlantic, Iowa, is

irrelevant to the facts to which Defendant pled guilty as stated during the change of plea

hearing.  Nor does the existence of that document demonstrate anything about the ability of

the Government to prove its case.  Moreover, even if it did, "'[a] defendant is not entitled to

withdraw his plea merely because he discovers long after the plea has been accepted that his

9

calculus misapprehended the quality of the State's case.'" <u>United States v. Freeman</u>, 625 F.3d 1049, 1053 (8th Cir. 2010) (quoting <u>Brady v. United States</u>, 397 U.S. 742, 757 (1970)). Therefore, Defendant's "lack of factual basis" reason is insufficient to support withdrawal of his plea.

### 5.    Undue prejudice at subsequent trials

Fifth, Defendant argues that having a guilty plea to Count 1 in the record will cause him undue prejudice in his trials on the remaining charges.  (Def.'s Reply at 17.)  According to Defendant, because Count 1 is scheduled as the first trial group in this matter, the trier of fact will infer his guilt in the subsequent trials, regardless of any limiting instructions.  (<u>Id.</u> at 17–18.)  Therefore, he also requests that the trial groups be rearranged so that Count 1 proceeds to trial last.  (<u>Id.</u> at 18.)

The trial groups in this case were set in the Court's Order on April 9, 2013 [Doc. No. 341].  Therefore, Defendant was well aware of the sequence in which those trials would take place when he pled guilty to Count 1 on April 22.  Furthermore, Defendant's arguments are based on pure speculation about how the Government would proceed in making its case.  Such speculation does not constitute a fair and just reason for withdrawal of Defendant's plea, and the Court declines to re-order the trial groups.

### 6.    Coercion

Sixth, while not specifically enumerated by Defendant as a reason for withdrawal of his guilty plea to Count 1, Defendant asserts in his motion papers that he was coerced by the Court and the Government into pleading guilty.  (<u>See</u> Def.'s Mot. at 2–3, 6–7.)  Specifically, Defendant asserts that he knew that he could face significantly more prison time if he were

to proceed with a jury trial and be found guilty than if he were to plead guilty, that he knew

that he would lose favorable sentencing considerations if he were to proceed with a trial,

and that the plea colloquy was designed to elicit affirmative answers.  (Id.)

Defendant's arguments lack merit.  First, Defendant's knowledge of the structure and

application of the sentencing guidelines does not prevent his plea from being voluntary.

The Court did not participate in plea agreement discussions[5]; nor did the Court threaten

Defendant with a harsher sentence if he did not plead guilty.[6]  Indeed, Defendant's own

---

[5]     Defendant asserts that the Court advised him at the April 22 hearing that he
needed to enter into a plea agreement in order to plead guilty.  (See Def.'s Reply at 29.)
However, Defendant leaves out the Court's subsequent correction of its statement:  "I'll
step back a minute.  No, you don't have to take a plea agreement; that's correct."  (Apr.
Tr. 7:4-5.)

[6]     While Defendant alleges that the magistrate judge in this case stated that she could
sentence him to up to 300 years in prison, (see Def.'s Reply at 29), Defendant takes the
magistrate judge's comments out of context.  The statements that Defendant points to
occurred during a hearing on September 6, 2012, on Defendant's motion to proceed pro
se.  (See Tr. of Sept. 6, 2012, Hr'g [Doc. No. 77].)  In explaining the requirements that
Defendant had to meet in order to represent himself, the magistrate judge stated:

> You must know of what you are doing and you must make your choice with
> your eyes wide open.  So, I need to explain to you at this point the
> difficulties and dangers of self representation.  And part of it is, you know,
> just getting right to what you are charged with, you are charged with very
> serious federal crimes, armed bank robbery.  These charges carry very
> serious penalties if you are convicted.
>
> The statutory maximum penalties for each count is 25 years, is that correct?

(Id. at 4:23–5:6.)  After the Government responded that the number was correct, the
magistrate judge went on to note:  "25 years in prison, and those can be consecutive
years.  Those can be consecutive sentences.  So, you are facing extremely serious
penalties if you are convicted."  (Id. at 5:8-11.)  Rather than involving herself in plea
negotiations or threatening Defendant, the magistrate judge was ensuring that
"[Defendant's] request for self-representation [was] knowing and intelligent and
voluntary."  (Id. at 4:12-13.)

statements at the change of plea hearing plainly contradict his claim of coercion.  For example, at the outset of the hearing, the Court engaged in a discussion with Defendant regarding this exact issue, and Defendant stated that he was proceeding to enter his plea without coercion:

> THE COURT:  Okay.  Mr. Wetsch,[7] I want to ask you a few questions about this before we go down this path, just to make sure this is what you want to do, because I will not accept a plea if you feel in any way that it's been coerced.  So, this document suggests that you feel like you're between a rock and a hard place and you have no choice and there's been terrible injustice by this Court and the U.S. Attorney's Office and everybody else.  If that's how you feel and that's why you're going to plead, I can't accept that plea.

> A plea needs to be knowing and voluntary.  You need to be able to say to me that this is what you want to do, not what you have to do.  Do you want to give that some thought while we pick the jury, or do you want to proceed with a plea hearing?

> THE DEFENDANT:  I would like to proceed with a plea hearing.

> THE COURT:  And are you going to be able to tell me truthfully under oath that you are making that plea voluntarily, that you are not feeling any coercion from any source?

> THE DEFENDANT:  I will, Judge Nelson.  There is, however, an implied—I mean I think just the nature of a judicial proceeding, there's some inherent— the way I view it, I don't feel that there's been this complete travesty of misjustice.  I think just by the nature of the proceeding, there's this implied or inherent coercion that if a guilty plea is not tendered that perhaps somebody could face additional years in prison.  And you and the Court as a whole has been clear to me that by proceeding pro se, by the fact that I'm proceeding with a trial which is constitutionally afforded to me, that I do face, as [has] been said to me, a lifetime in prison, potentially.

> . . . .

---

[7]   At the time of the April 22, 2013, change of plea hearing, Defendant's name was Mark Edward Wetsch.  He has since changed his name to Sheikh Bilaal Muhammad Arafat [Doc. No. 403].

THE DEFENDANT:  . . . . So with that being said, I'm proceeding to voluntarily and fully, without any other outside forces or coercion, plead guilty as charged.

(Apr. Tr. 4:2–6:5.)  Later, Defendant confirmed, once again, that he was making his plea voluntarily and of his own free will.  (Id. at 21:17-19.)  And, the Court again questioned Defendant about his previous allegations of coercion and was told by Defendant that he was not being coerced into pleading guilty:

[THE COURT]:  As we discussed earlier, you submitted a document this morning to the Court which is replete with allegations of coercion.  As I told you, I will not accept a plea agreement—a plea if you believe that you have been coerced in any way in pleading guilty.  Have you been coerced in any way in pleading guilty?

[THE DEFENDANT]:  I have not.

[THE COURT]:  Has anyone forced you or threatened you to plead guilty?

[THE DEFENDANT]:  No, they haven't.

[THE COURT]:  Has anyone done any violence to you or any other person to get you to plead guilty?

[THE DEFENDANT]:  They have not.

[THE COURT]:  Have you felt any threats or coercion from the Court or from the Government to plead guilty?

[THE DEFENDANT]:  If I could just preface my response, I—the nature of the proceeding is an [sic] inherently coercive.  Now, that does have an impact on my decision making.  It's not a direct coercion.  I don't feel like I'm being held to the coals, per se.  But I'm certainly well aware that I lose—by going to a trial and—I lose—I lose potential sentencing considerations in my favor by not accepting full responsibility at a certain stage in the proceedings.  I recognize by going to trial and if I were to be acquitted or found not guilty of the 2113(d), that even with that established in itself, I still would lose some sentencing considerations in regards to acceptance of responsibility in accordance with the United States Sentencing Guidelines pursuant to 3E.11A and B.

13

But with that being said, I did walk into the bank, I did use a toy gun that was perceived to be a real gun, and that perception caused another individual to fear for their life.  And with that being said, I accept responsibility.  I did rob the bank.  And with that being said, I'm not being coerced into pleading guilty.

[THE COURT]:  Okay.  Let me walk through that with you.  I think what you're saying to me is that the way in which the Sentencing Guidelines— which are advisory, you understand—

[THE DEFENDANT]:  Correct.

[THE COURT]:   —are structured, there are considerations given to individuals who choose to plea over individuals who go to trial.

[THE DEFENDANT]:  Correct.

[THE COURT]:  Favorable considerations?

[THE DEFENDANT]:  Right.

[THE COURT]:  And that is the source of the so-called coercion that you feel today.  Is that correct?

[THE DEFENDANT]:  Correct.

[THE COURT]:  Do you feel coercion from any other source?

[THE DEFENDANT]:  No.

[THE COURT]:  And you're pleading guilty today because, as you point out, you're guilty of the crime that's been charged.  Is that correct?

[THE DEFENDANT]:  Correct.  I've never disputed that.

(Id. at 21:20–23:21.)  Finally, the Court clarified that the sentence that Defendant would

receive as a result of pleading guilty to Count 1 would not be determined until a later date,

but that it would not be more than necessary to accomplish the goals of sentencing:

[THE COURT]:  You understand, too, Mr. Wetsch, that I have no idea today what sentence I would give you.  And the reason for that is that between now and the time of sentencing, there will be a presentence investigation that will take place and a Presentence Investigation Report that will be generated.  And it is a fairly extensive, complete report.  You'll be interviewed, for instance, as part of that investigation.  You may have Mr. Kushner at your side, if you wish, for that interview.

And at the conclusion of the investigation, after the report is generated, it's provided to you and the Government for objections.  You may object to it, and then all of that information is given to the Court.  And what the Court then does is she takes a look at the guidelines as a starting point in making a decision, but I don't even assume the guideline range to be reasonable; I assume it to be advisory.

And what I do is I take a look at factors under what we call 3553(a) that consider your unique circumstances, the nature of the offense, your criminal history, that sort of thing.  And based on all of that, it is my task that I take very seriously to fashion a sentence that is one day—that is not one day more than necessary—one day of imprisonment more than necessary to achieve the goals of sentencing.  In other words, it's sufficient but not greater than necessary to achieve those goals.  And those goals include a consequence for the crime, a punishment for the crime, deterring you from committing crimes in the future, deterring others from committing crimes, ensuring that there isn't any unfair disparity between your sentence and the sentence of others similarly situated, promoting respect for the law.  Those are the kinds of factors that the Court considers in fashioning the sentence at that point.  Do you understand that?

[THE DEFENDANT]:  I'm familiar with 3553, yes, Your Honor.

(Id. at 25:15–26:23.)  Thus, in the absence of some improper involvement by the Court, Defendant's belief that the judicial system is inherently coercive does not prevent his plea from being voluntary.  See Fed. R. Crim. P. 11(b)(2) (stating that, prior to accepting a guilty plea, the court must "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)" (emphasis added)).

15

Second, the Court made it clear that the purpose of the plea colloquy was not simply to elicit affirmative answers, but rather to ensure that Defendant was making an informed decision:

> [THE COURT]:  Now, as I'm asking you these questions today, if there's something you don't understand, I want you to bring that to my attention so I can rephrase the question for you.  Okay?
>
> [THE DEFENDANT]: Okay.
>
> [THE COURT]:  And if there's something I ask you and you'd like the chance to talk to Mr. Kushner as your stand-by counsel about it, you're welcome to do it.  Okay?
>
> [THE DEFENDANT]: Okay.
>
> [THE COURT]:  The most important thing, sir, is if I am satisfied that you enter a plea of guilty today that is voluntary and knowing and informed and if I accept that plea, you cannot withdraw that plea.  Do you understand that?
>
> [THE DEFENDANT]:  I do.
>
> [THE COURT]:  Okay.  So that's why it's important, before you plead guilty, to ensure that you're satisfied that that's what you want to do.  Okay?
>
> [THE DEFENDANT]: Okay.

(Id. at 9:24–10:15.)  Therefore, Defendant's "coercion" reason is insufficient to support withdrawal of his plea.

### 7.    Miscellaneous

Finally, Defendant lists a litany of miscellaneous reasons why he should be allowed to withdraw his plea.  Defendant vaguely asserts that he has been the victim of prosecutorial abuse; dilatory tactics by the Court in its rulings; antagonism for exercising his right to proceed pro se and for making claims of prosecutorial and judicial misconduct; favoritism

toward the Government; collusion between the Court, the Government, the public defender, and the probation officer; and civil liberty restrictions, including monitoring of his mail and restricting his ability to freely exercise his religion. (Def.'s Mot. at 10–12.) However, Defendant provides no substantive evidence to support his claims. More importantly, he does not explain why these alleged occurrences should entitle him to withdraw his plea. Therefore, these reasons are not sufficient to support withdrawal of Defendant's guilty plea.

Accordingly, the Court finds that Defendant has not met his burden of establishing a fair and just reason for withdrawal of his guilty plea to Count 1.

### B.   Other Considerations

The Court may properly deny Defendant's motion solely on the basis that he has not demonstrated a fair and just reason permitting withdrawal of his plea. Ramirez-Hernandez, 449 F.3d at 826 ("Where the court sees no fair and just reason to permit withdrawal, . . . additional matters need not be considered.") (citation omitted). However, even if Defendant had established a fair and just reason, the Court finds that other considerations weigh against permitting withdrawal in this case.

As noted above, where a defendant establishes a fair and just reason for withdrawal of his guilty plea, a court must consider (1) whether he asserts his innocence of the charge, (2) the amount of time that passed between the guilty plea and the motion to withdraw it, and (3) whether the government would be prejudiced by withdrawal. Id. (citing Nichols, 986 F.2d at 1201). As for the first factor, Defendant's only assertion of innocence relates to his culpability under 18 U.S.C. § 2113(d). However, Defendant's own statements at the change of plea hearing demonstrate that he has maintained his guilt as to Count 1—

17

including § 2113(d)—from the "get-go." (Apr. Tr. 5:9–18.) And, he clearly and knowingly reaffirmed that guilt at the hearing: "I clearly recognize I could be found guilty of 2113(d). So with that being said, I'm proceeding to voluntarily and fully, without any other outside forces or coercion, plead guilty as charged." (Id. at 6:1-5.) Defendant's current unsupported assertions that his conduct did not amount to a violation of § 2113(d) and that he "instinctively plead guilty to §2113(d) without involving reason," (Def.'s Reply at 6), are unpersuasive, as discussed above. Therefore, Defendant's asserted innocence does not weigh in favor of withdrawal.

As for the second factor, Defendant waited over six months to move for withdrawal of his guilty plea to Count 1. The issues Defendant raised in his November motion are all issues that he could have raised at the time he entered his plea in April. Defendant offers no explanation as to why he waited so long to bring his motion. Therefore, this factor weighs against permitting withdrawal.

As for the third factor, the Government argues that it will be prejudiced if Defendant is allowed to withdraw his guilty plea. (Govt.'s Resp. in Opp. to Def.'s Mot. to Withdraw His Pleas of Guilty and Recusal of Assigned District Court Judge [Doc. No. 436] ("Govt.'s Resp."), at 22.) The Government asserts that it was prepared to proceed to trial on the day Defendant entered his plea and that it may now be unable to secure witnesses for trial in this two-year-old case. (Id.) Thus, this factor, too, weighs against permitting withdrawal.

Therefore, even if Defendant had put forth a fair and just reason warranting withdrawal of his guilty plea to Count 1, the Court finds that the other required

considerations weigh against permitting him to withdraw the plea.  For these reasons,

Defendant's motion to withdraw his guilty plea to Count 1 is denied.

### III.   MOTION TO WITHDRAW GUILTY PLEA TO COUNTS 3, 4, 7, 10, AND 12

Defendant seeks to withdraw his guilty plea to Counts 3, 4, 7, 10, and 12 pursuant to

Rule 11(d)(1) of the Federal Rules of Criminal Procedure and, in the alternative, pursuant to

Rule 11(d)(2)(B).  Because the Court accepted Defendant's guilty plea to Counts 3, 4, 7, 10,

and 12 before Defendant filed his motion to withdraw and because Defendant cannot show

a fair and just reason for requesting the withdrawal, he is not entitled to withdraw his plea.

### A.   Rule 11(d)(1)

Defendant first seeks to withdraw his guilty plea to Counts 3, 4, 7, 10, and 12

pursuant to Rule 11(d)(1).  "Under Rule 11(d), a criminal defendant is allowed to withdraw

a guilty plea for any reason (or no reason at all) until the time the trial court accepts the

plea."  United States v. Head, 340 F.3d 628, 630 (8th Cir. 2003) (emphasis added).  The

Eighth Circuit has acknowledged that, for purposes of this rule, the court's acceptance of a

plea may be either explicit or implicit.  See id.; United States v. Tyerman, 641 F.3d 936, 942

(8th Cir. 2011) (citing Head, 340 F.3d at 630–31).  "'[W]hat matters ultimately is the

language of the trial court and the context in which it is used.'"  Tyerman, 641 F.3d at 943

(quoting United States v. Byrum, 567 F.3d 1255, 1261 (10th Cir. 2009)).  Moreover, a court

may separately accept a plea of guilty and a plea agreement.  Head, 340 F.3d at 631 (citing

United States v. Hyde, 520 U.S. 670, 673–74 (1997)).

The Eighth Circuit in <u>United States v. Head</u>, 340 F.3d 628 (8th Cir. 2003), and

<u>United States v. Tyerman</u>, 641 F.3d 936 (8th Cir. 2011), discussed the parameters of

implicit acceptance of pleas under Rule 11(d)(1).  In <u>Head</u>, the Eighth Circuit reversed the

district court's denial of a motion to withdraw a guilty plea, stating:

> After carefully reviewing the [change of plea hearing] transcript, we cannot
> say that the district court accepted [the defendant's] guilty plea at that time.
>
> First, the court does not explicitly do so through the use of words such as "I
> accept your plea of guilty."  <u>Nor do we believe that the district court
> implicitly accepted the plea.  Although the district court does detail the
> consequences of a guilty plea</u>—giving up rights to further trial proceedings—
> <u>it also makes clear that the plea is not yet accepted.</u>

340 F.3d at 630–31 (emphases added).  In explaining that there had been no implicit

acceptance of the plea, the Eighth Circuit pointed to the district court's statements during

the change of plea hearing that the defendant "'would go back to trial on all of the original

charges" if the plea agreement were rejected, and that the government had reserved the right

to withdraw from the plea agreement if the defendant were to "'commit any new offense

before [the court] accept[s] the guilty plea.'"  <u>Id.</u> at 631 (citations and emphases omitted).

Similarly, in <u>Tyerman</u>, the Eighth Circuit determined that the district court neither

explicitly nor implicitly accepted the defendant's guilty plea at the change of plea hearing.

641 F.3d at 942.  As for implicit acceptance, the court noted that, although the district court

had detailed the consequences of entering a guilty plea, "[o]n two occasions, the district

court explicitly indicated that it <u>was not</u> accepting the guilty plea" at that time.  <u>Id.</u>  First,

"[the district court] stated that it was 'going to put off accepting [the defendant's] plea'

pending its review of the PSR."  <u>Id.</u> (citation omitted).  Second, in response to the

government asking whether the court was going to make findings as to voluntariness, the court stated: "'Yeah. I generally don't make those until I accept the plea, but I think I will today because of where we're at.'" Id. (emphasis omitted). Therefore, the Eighth Circuit reversed the district court's denial of the defendant's motion to withdraw his guilty plea. Id. at 944. Notably, in doing so, the court of appeals did not rely on the district court's statement that the defendant's not guilty plea would be reinstated and he would go to trial if the court did not accept the Rule 11(c)(1)(C) plea agreement. See id. at 936–37.

In rendering its decisions in Head and Tyerman, the Eighth Circuit stated that it was "[g]uided by the language used by the district court indicating that the plea was not yet accepted, and . . . the absence of any explicit statement to the contrary." Head, 340 F.3d at 631 (emphasis added); accord Tyerman, 641 F.3d at 942 (citing Head, 340 F.3d at 631). In each of those cases, the language that the court of appeals pointed to as indicating that the plea had not been accepted consisted of the district courts' express statements to that effect. Thus, the Eighth Circuit found a lack of implicit acceptance of a guilty plea where— although the district court had conducted the plea colloquy—the district court expressly indicated that the plea had not been accepted.

Other circuit courts of appeal have similarly concluded that the language used by a district court in receiving a plea is important, but that no "magic words" are required for the court to indicate its acceptance of the plea. In addition, they have demonstrated that a district court's completion of a Rule 11 plea colloquy is a strong indicator of its implicit acceptance of the plea. For example, the Fourth Circuit in United States v. Battle noted that:

> Rule 11 is silent as to how a district court must signal its acceptance of a guilty plea. As a precondition to acceptance, the district court must first complete the plea colloquy. Fed. R. Crim. P. 11(b). In that regard, acceptance of a guilty plea is intimately tied to the colloquy and Rule 11(b). <u>But beyond conducting the colloquy, the Rules do not specify what a district court must say or do to accept a plea. Given the Rules' silence, we see no reason to require district courts to use some kind of talismanic "magic words" to effect an acceptance once the colloquy has been completed.</u>

499 F.3d 315, 321–22 (4th Cir. 2007) (emphasis added); <u>see</u> <u>Byrum</u>, 567 F.3d at 1261 ("Rule 11 does not prescribe any specific language of acceptance, and imposing a requirement on the district court to utter some talismanic words to effect an acceptance is not supported by the Federal Rules of Criminal Procedure or the case law."). In that case, the district court conducted the plea colloquy and found that there was a factual basis for the plea and that the defendant was competent, acting voluntarily, and appreciated the consequences of his guilty plea. <u>Battle</u>, 499 F.3d at 318. The court then "'provisionally accepted'" the defendant's guilty plea and "'defer[red] final acceptance of the plea agreement and the adjudication of guilt,'" pending review of the presentence investigation report. <u>Id.</u> (citation omitted). After receiving the presentence investigation report, the defendant moved to withdraw his plea. <u>Id.</u> The district court applied the "fair and just reason" standard under Rule 11(d)(2) and denied the motion. <u>Id.</u> In finding that the district court had accepted the defendant's plea prior to the defendant's motion to withdraw and, therefore, that the district court had correctly applied the "fair and just reason" standard, the Fourth Circuit explained that:

> Permitting a defendant to withdraw a guilty plea for any reason or no reason in these circumstances would undermine the importance of the plea colloquy. The rules should not be interpreted to allow a defendant to withdraw a guilty plea "simply on a lark" after the district court conducts a thorough plea

colloquy and has made the requisite findings.   <u>During the colloquy, the defendant admits, in open court, that he is guilty and describes the circumstances of his guilt.   It makes little sense to permit an unconditional withdrawal of a guilty plea after the colloquy has been conducted, especially when the district court has informed the defendant of the consequences of pleading guilty and the defendant had no reason to believe he could withdraw the plea at a later date for any reason.</u>   Even if the circumstances warrant a withdrawal after the colloquy, the defendant is adequately protected by the fair and just withdrawal standard.   <u>Thus, once the district court has satisfied Rule 11's colloquy requirement, there is a presumption that the court has accepted the defendant's guilty plea.</u>

<u>Id.</u> at 321 (internal citations omitted) (emphases added); <u>see</u> <u>Byrum</u>, 567 F.3d at 1261–62 (agreeing with the reasoning in <u>Battle</u> and finding that a district court has accepted a plea for purposes of Rule 11 where the court conducts a plea colloquy and provisionally or conditionally accepts the plea pending review of the presentence investigation report).

Similarly, the Ninth Circuit in <u>In re Ellis</u> considered whether a district court may vacate a previously-accepted guilty plea upon its rejection of the relevant plea agreement. 294 F.3d 1094 (9th Cir. 2002), <u>vacated and reh'g granted</u>, 313 F.3d 1094 (9th Cir. 2002). As part of its analysis, the three-judge panel determined that the guilty plea in that case had been accepted by the district court as evidenced by the court's completion of the Rule 11 plea colloquy:

The district court did indeed accept the plea at the December 8 proceeding, in the portion quoted above where the court said "Okay.   I find that you knowingly and intelligently waived your rights to have this matter presented to a Grand Jury.   And you know your rights . . . ."   This meant that so far as the court could determine, the plea was voluntary, the defendant was competent to enter it, the defendant had been properly advised of the consequences and understood them, the defendant knowingly and intentionally waived his rights to jury trial, confrontation, and so forth, as required by the procedure for accepting pleas set out in Federal Rule of Criminal Procedure 11.

23

Id. at 1099.  On rehearing en banc, the Ninth Circuit reviewed the same language, and a majority determined that "[t]here can be no dispute that the district court accepted [the defendant's] guilty plea."  In re Ellis, 356 F.3d 1198, 1204 (9th Cir. 2004).

A review of the proceedings in this case demonstrates that the Court accepted Defendant's plea of guilty to Counts 3, 4, 7, 10, and 12 prior to November 18, 2013, when Defendant filed his motion to withdraw his plea.[8]  While the Court did not explicitly accept Defendant's plea during the May 6, 2013, change of plea hearing, the Court did implicitly accept the plea.  The Court completed a thorough Rule 11 plea colloquy by advising and questioning Defendant in regard to the rights he would give up in entering a guilty plea, (Tr. of Change of Plea Hr'g, dated May 6, 2013 [Doc. No. 395] ("May Tr."), at 8:25–11:22); determining that there was a factual basis for the plea (which included Defendant's admission, in open court, of responsibility for thirty-one bank robberies), (id. at 29:8–63:1); and finding that Defendant was entering the plea voluntarily, (id. at 63:8-17).  The Court then received Defendant's guilty plea and deferred its decision only in regard to the plea agreement:

> THE COURT:  Mr. Wetsch,[9] then, how do you plead to Counts 3, 4, 7, 10, and 12 of the Indictment?  Do you plead guilty or not guilty?
>
> THE DEFENDANT:  Guilty.

---

[8]   In his Position With Respect to Sentencing, filed on November 14, 2013, Defendant indicated a desire to withdraw his guilty plea in the event the Court decided to sentence him to prison for more than 108 months [Doc. No. 424].  Even if the Court were to consider that November 14 statement to be a motion to withdraw, the analysis herein remains the same.

[9]   At the time of the May 6, 2013, change of plea hearing, Defendant's name was Mark Edward Wetsch.  He has since changed his name to Sheikh Bilaal Muhammad Arafat [Doc. No. 403].

THE COURT:  I find that the Defendant, Mark Edward Wetsch, is clearly mentally competent and capable of entering an informed plea.  I find that he is aware of the nature of the charges against him, the nature of these proceedings, and the consequences of his plea of guilty.  I find that his plea of guilty is free, voluntary, knowing, and informed, and that the plea is supported by independent facts in the record establishing all the elements of the offense.

As I said, I will defer a decision on whether to accept the plea agreement until I've reviewed the presentence report. . . .

The Court will receive the report and the objections, and at that time I will sit down and study the matter and determine whether to accept the plea agreement.  We will schedule a sentencing hearing, at which time you'll have a full opportunity to be heard and at which time I will determine whether to sentence you pursuant to the plea agreement.

(Id. at 63:23–64:25 (emphasis added).)  As noted by the Court, the only outstanding issues remaining after the change of plea hearing were (1) whether the Court would accept the plea agreement and (2) sentencing.  Importantly, unlike the district courts in Head and Tyerman, at no point during the hearing did the Court state that it was deferring a decision on whether to accept the plea itself.  In fact, the Court even indicated at the outset of the hearing that it was prepared to accept Defendant's plea after conducting the plea colloquy:

THE COURT:  Good morning, Mr. Wetsch.  Mr. Wetsch, I understand that you are here today because you wish to enter a guilty plea.  Is that correct?

THE DEFENDANT:  That is correct.

THE COURT:  Now, before I can accept that plea, I need to ask you a number of questions. . . .

(Id. at 3:18-23 (emphasis added).)  Thus, the only conclusion to be drawn is that the Court accepted Defendant's guilty plea at the May 6 change of plea hearing.

25

The Court has confirmed its acceptance of the guilty plea in subsequent orders. For example, in its Order issued on May 31, 2013, the Court stated:

> Defendant appeared for change-of-plea hearings on April 22, 2013, and May 6, 2013. At those hearings, Defendant plead guilty to a total of six counts of armed bank robbery in violation of 18 U.S.C. § 2113. <u>He now stands convicted of those crimes.</u> Defendant also admitted responsibility for a total of thirty-one bank robberies, some of which were contained in the Indictment and others which were not. The plea agreement in this matter, which has been entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, calls for a sentence of 168 months. <u>Defendant is currently in federal custody and is awaiting sentencing.</u>

(Order dated May 31, 2013, at 1–2 [Doc. No. 388] (emphases added). Similarly, in an Order dated November 12, 2013, the Court stated:

> Defendant appeared for change-of-plea hearings on April 22, 2013, and May 6, 2013. At those hearings, Defendant pled guilty to a total of six counts of armed bank robbery in violation of 18 U.S.C. § 2113. <u>He now stands convicted of those crimes.</u> Defendant also admitted responsibility for a total of thirty-one bank robberies, some of which were contained in the Indictment and others which were not. The plea agreement in this matter, which was entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, calls for a sentence of 168 months. <u>Pursuant to Rule 11, the Court has no discretion other than to accept or reject the agreed-upon sentence.</u> <u>Defendant is currently in federal custody and is awaiting sentencing</u> . . . .

(Order dated Nov. 12, 2013, at 1–2 [Doc. No. 423] (emphases added).)

While Defendant acknowledges that the Court conducted a thorough Rule 11 plea colloquy at the May 6 hearing, he contends that the Court did not accept his guilty plea at that time. (<u>See</u> Def.'s Mot. at 4–6.) He makes three main arguments in support of his position. First, Defendant argues that the Court's deferral of acceptance of the plea agreement pending review of the presentence investigation report equates to a deferral of the guilty plea. (<u>See</u> <u>id.</u> at 4; Def.'s Reply at 23.) However, as noted above, the plea and plea

agreement are separate from each other; thus, deferral of a decision regarding the plea

agreement does not necessarily constitute deferral of a decision regarding the plea itself.

Second, Defendant argues that the Court did not accept the plea with words such as, "I

accept your plea of guilty." (See Def.'s Mot. at 5.) As detailed herein, such explicit

language is not necessary. Finally, Defendant relies on the Court's statement that he would

proceed to trial if the Court were to reject the plea agreement as an indication that the Court

did not accept his plea. (Def.'s Reply at 21 (citing May Tr. 28:22-23).) However,

Defendant's plea agreement was made pursuant to Rule 11(c)(1)(C), and the Court's

statement merely summarizes the procedure according to Rule 11(c)(5), which provides that

a defendant may withdraw his plea and proceed to trial if the court rejects his 11(c)(1)(C)

plea agreement. Indeed, the Court's statement in this case is similar to that made by the

district court in Tyerman and which the Eighth Circuit declined to acknowledge as evidence

that the district court had deferred acceptance of a guilty plea made pursuant to an

11(c)(1)(C) plea agreement. Thus, Defendant's arguments fail.

Accordingly, the record in this case clearly reflects the Court's intent at the May 6,

2013, change of plea hearing, which was to accept Defendant's guilty plea to Counts 3, 4, 7,

10, and 12, and to defer its decision on the Rule 11(c)(1)(C) plea agreement until it had a

chance to review the presentence investigation report. The Court conducted a thorough plea

colloquy, during which Defendant was informed of the consequences of pleading guilty,

voluntarily and knowingly admitted his guilt in open court, and described the circumstances

of his guilt. Thereafter, Defendant had no reason to believe he could unconditionally

withdraw his plea at a later date. As noted by the Fourth Circuit, permitting Defendant to do

so in these circumstances would undermine the importance of the plea colloquy.  For these

reasons, the Court denies Defendant's motion to withdraw his plea to Counts 3, 4, 7, 10, and

12 pursuant to Rule 11(d)(1).

### B.    Rule 11(d)(2)(B)

As an alternative basis for his motion, Defendant seeks to withdraw his guilty plea to

Counts 3, 4, 7, 10, and 12 pursuant to Rule 11(d)(2)(B).  As noted above, that Rule

contemplates that a defendant may withdraw a plea of guilty after the court accepts the plea,

but prior to sentencing, if the defendant can demonstrate a "fair and just reason" for

withdrawal.  Fed. R. Crim. P. 11(d)(2)(B); see Norvell, 729 F.3d at 792 ("The defendant

bears the burden of showing such a reason.") (citation omitted).  And, even if the defendant

can establish a fair and just reason, other considerations may weigh against permitting

withdrawal.  See Ramirez-Hernandez, 449 F.3d at 826.

As discussed above, the Court completed a thorough Rule 11 plea colloquy at the

May 6 change of plea hearing.  Defendant then pled guilty, and the Court accepted his plea.

Yet, Defendant now puts forth several reasons that he claims warrant the withdrawal of that

plea.[10]  None of these reasons are sufficient to support his motion.  Moreover, even if

Defendant could establish a fair and just reason, the Court finds that other relevant

considerations weigh against allowing withdrawal in this case.

---

[10]     Defendant asserts that, in addition to the reasons discussed below for withdrawal
of his guilty plea to Counts 3, 4, 7, 10, and 12, he also relies on the reasons he set forth in
support of his motion to withdraw his plea to Count 1.  (Def.'s Reply at 28.)  As detailed
above, those reasons were insufficient to support withdrawal of Defendant's guilty plea
to Count 1.  For the same reasons, they are also insufficient to support withdrawal of
Defendant's guilty plea to Counts 3, 4, 7, 10, and 12.

### 1.   Alleged fair and just reasons

### a.   Misled about sentencing concessions

First, Defendant alleges that his plea was not knowing, voluntary, and intelligent because he was misled by the Government about the sentencing concessions he would receive as a result of pleading guilty.  (See Def.'s Mot. at 6; Def.'s Reply at 30.)  He contends that the Government agreed to recommend a three-level reduction for acceptance of responsibility and a specified highest offense level, and that the Government now opposes the reduction for acceptance of responsibility because Defendant objected to parts of the presentence investigation report.  (Def.'s Reply at 30–31.)  He also argues that the presentence investigation report includes an offense level higher than what was stipulated to in the plea agreement.  (Id. at 31.)  Finally, Defendant asserts that he did not understand that his admissions to the twenty-five other charges could be used to enhance his sentence.  (Id. at 39–40.)

Defendant's argument lacks merit.  Defendant entered into a Rule 11(c)(1)(C) plea agreement as to Counts 3, 4, 7, 10, and 12.  Due to the nature of an 11(c)(1)(C) plea agreement, the Court has no discretion other than to accept or reject the plea agreement. The parties are entitled to, and did, submit position statements with regard to sentencing; and the Court will review those documents, along with the presentence investigation report, in determining whether to accept the plea agreement.  However, while Defendant may take issue with portions of the Government's position statement and with the presentence investigation report, he is not entitled to withdraw his guilty plea on those bases because the arguments have no impact on the knowing and voluntary nature of his plea.  Nor is he

entitled to withdraw his plea based on the manner of calculation of the sentence.  Not only

did Defendant acknowledge his agreement to that sentence during the change of plea

hearing, (see May Tr. 24:11-23), but he also acknowledged his understanding of the

guidelines calculations in the plea agreement, (see id. at 21:4–23:16).  Therefore,

Defendant's "sentencing concessions" reason is insufficient to support withdrawal of his

plea.

### b.  No meaningful access to legal resources

Second, Defendant asserts that his guilty plea to Counts 3, 4, 7, 10, and 12 was not

entered knowingly, voluntarily, and intelligently because he did not have "meaningful

access" to legal resources.  (Def.'s Mot. at 6.)  Defendant states that both the legal resources

to which he had access and the performance of his standby counsel were inadequate, leading

to his inability to prepare his defense.  (See Def.'s Mot. at 6, 12–13.)  For the same reasons

discussed in Part II.A.2., Defendant's "lack of meaningful access to legal resources" reason

is insufficient to support withdrawal of his plea to Counts 3, 4, 7, 10, and 12.

### c.  Insufficient factual basis

Third, Defendant asserts that there was an insufficient factual basis to support his

plea.  (Def.'s Mot. at 6.)  Defendant, however, provides no further detail to explain his

allegation.  As discussed above, the Court properly determined that there was a factual basis

for the plea, during which Defendant admitted, in open court, his responsibility for thirty-

one bank robberies.  (See Tr. 29:8–63:1.)  Therefore, Defendant's "insufficient factual

basis" reason is insufficient to support withdrawal of his plea.

#### d.  Rote plea colloquy

Fourth, Defendant asserts that the plea colloquy was designed to elicit affirmative responses.  (Def.'s Mot. at 6–7.)  However, the Court made it clear that the purpose of the plea colloquy was not simply to elicit affirmative answers, but rather to ensure that Defendant was making an informed decision:

> [THE COURT]:  Now, if there's anything I say today that you don't hear or understand, I want you to ask me to repeat it.  And if at any time you want to consult with Mr. Kushner, you are welcome to do so; all you have to do is ask me.  Okay?
>
> [THE DEFENDANT]:  Okay.

(May Tr. 7:7-11.)  Therefore, Defendant's "rote plea colloquy" reason is insufficient to support withdrawal of his plea.

#### e.  Instinct and coercion

Fifth, Defendant appears to assert that he pled guilty to Counts 3, 4, 7, 10, and 12 as a result of instinct and coercion.  (See Def.'s Reply at 28–30.)  He states:

> Regardless of Sheikh Arafat's guilt or innocence to the additional counts and considering his anemic and non-violent criminal history, coupled with the influential and powerful position(s) of both the judiciary and the Government, Sheikh Arafat instinctively without involving reason or thought, originating below his conscious level, accepted a plea agreement, admitting to crimes he did not commit, believing a 14-year sentence was a "just" sentence for simply one (1) bank robbery, regardless of his guilt or innocence to the other charged offenses.

(Id. at 28 (brackets and emphasis omitted).)  He then claims that the Court involved itself in plea discussions during the April 22 change of plea hearing regarding Count 1 by stating that he was required to enter into a plea agreement in order to plead guilty, and that this caused him to plead guilty to the remaining charges because he believed he would not get a

fair trial in front of the same Court.  (Id. at 29–30.)  He asserts that "[n]ow, after careful consideration and absorbing the inrush to the Government's powerful stimuli, coupled with involving reason and conscious thought and considering his anemic and non-violent criminal history," he believes the 14-year sentence is unjust.  (Id. at 30.)

Defendant's arguments lack merit.  First, the Court was not involved in plea discussions during the April 22 hearing.  Rather, the Court confirmed that Defendant was not required to enter into a plea agreement in order to plead guilty:  "No, you don't have to take a plea agreement; that's correct."  (Apr. Tr. 7:4-5.)  Second, Defendant's statements at the May 6 hearing plainly contradict the notion that his plea was unknowing or the result of coercion and instead demonstrate that his plea was knowing and voluntary.  After the Court reviewed the charges in Counts 3, 4, 7, 10, and 12, Defendant confirmed that he understood that those were the charges against him.  (May Tr. 12:13–15:3.)  He then admitted to his responsibility for thirty-one bank robberies, (id. at 29:8–63:1), and confirmed that he was pleading guilty for no reason other than that he was, in fact, guilty:

> [THE COURT]:  Okay.  Mr. Wetsch, are you making this plea voluntarily and of your own free will?
>
> [THE DEFENDANT]:  I am.
>
> [THE COURT]:  Has anyone forced you, threatened you, coerced you, or done any violence to you or any other person to get you to plead guilty?
>
> [THE DEFENDANT]:  They have not.
>
> [THE COURT]:  Are you pleading guilty because you're guilty of these charges?
>
> [THE DEFENDANT]:  Very much so, yes, Your Honor.

(Id. at 63:8-17.)  Therefore, Defendant's "belated misgivings about the wisdom of the [guilty plea]" are insufficient to warrant withdrawal.  Lawhorn, 735 F.3d at 820 (citations omitted).

### f.   Denial of evidentiary hearing

Sixth, Defendant argues that the Court abused its discretion in denying his motion requesting an evidentiary hearing prior to sentencing and that the Court lacks sufficient facts to make a sentencing determination because it did not schedule a pre-sentencing conference to address sentencing-related disputes.  (Def.'s Reply at 32–33.)  Defendant, however, entered into a Rule 11(c)(1)(C) plea agreement as to Counts 3, 4, 7, 10, and 12, leaving no discretion to the Court other than to accept or reject the agreed-upon sentence.  Defendant also filed a position statement with regard to sentencing [Doc. No. 424], as well as a response to the Government's position statement with regard to sentencing [Doc. No. 426]. Defendant does not explain how the lack of an evidentiary hearing or pre-sentencing conference supports withdrawal of his plea.  Therefore, Defendant's "denial of evidentiary hearing" reason is insufficient to support withdrawal.

### g.   Unfair sentence disparities

Seventh, Defendant argues that the 168-month sentence in his plea agreement is "unjust, preposterous, disparate and falls outside the heartland of what is contemplated under 18 U.S.C. §3553(a)," especially when compared to sentences recently imposed on other bank robbers.  (Def.'s Reply at 34.)  He contends that the Court must take this into consideration in sentencing.  (See id. at 34–35.)  Again, Defendant does not explain how his

recently-perceived unfairness of the sentence to which he agreed supports withdrawal of his guilty plea, and such "belated misgivings" are insufficient to warrant withdrawal.

### h.  False statements

Eighth, Defendant asserts that the Government and his former court-appointed counsel made false statements to the Court on April 16, 2012, that a resolution had been reached in this matter. (Def.'s Reply at 35.) He believes that, as a result, his "substantial rights to a timely trial and fair pretrial proceedings" have been affected. (Id. at 36 (brackets omitted).) However, Defendant does not explain how this alleged occurrence constitutes a fair and just reason supporting withdrawal of his guilty plea. Therefore, Defendant's assertion of "false statements" is insufficient to support withdrawal of his guilty plea.

### i.  Appeal rights

Ninth, Defendant briefly states that he "was under a distinct impression" that his right to appeal the lawfulness of the vehicle stop and his right to appeal whether his speedy trial rights were violated were preserved despite the plea agreement. (Def.'s Mot. at 7–8.) However, Defendant's statements during the change of plea hearing plainly contradict his current assertion. In reviewing with the Government the contents of the plea agreement, Defendant stated that he understood that he was waiving all of his appeal rights:

> [THE GOVERNMENT]:   Next, Paragraph 12, the waiver of appeal and collateral attack.  You understand that by pleading guilty, there is a very limited right to an appeal, really no right to an appeal.  Do you understand that?
>
> [THE DEFENDANT]:  I do understand.
>
> [THE GOVERNMENT]:  And typically the only right to an appeal would be for sentencing.  Do you understand that?

34

[THE DEFENDANT]:  Yes.

[THE GOVERNMENT]:  And you understand that pursuant to this plea agreement and the agreement pursuant to 11(c)(1)(C) of the Federal Rules of Criminal Procedure, you're waiving your right to appeal your sentence in this case?

[THE DEFENDANT]:  I'm aware of that.

[THE GOVERNMENT]:  And you understand that you then will, once this plea is entered, you will have no right to an appeal?

[THE DEFENDANT]:  That is correct.

(May Tr. 26:14–27:4.)  Therefore, Defendant's "appeal rights" reason is insufficient to support withdrawal of his guilty plea.

### j.   Miscellaneous

Finally, Defendant lists a litany of miscellaneous reasons why he should be allowed to withdraw his plea.  (See Def.'s Mot. at 10–12.)  These reasons are discussed above in Part II.A.7. and, for the same reasons discussed therein, are insufficient to support withdrawal of Defendant's guilty plea to Counts 3, 4, 7, 10, and 12.

Accordingly, the Court finds that Defendant has not met his burden of establishing a fair and just reason for withdrawal of his guilty plea to Counts 3, 4, 7, 10, and 12.

### 2.   Other considerations

The Court may properly deny Defendant's motion solely on the basis that he has not demonstrated a fair and just reason permitting withdrawal of his plea.  See Ramirez-Hernandez, 449 F.3d at 826.  However, even if Defendant had established a fair and just

reason, the Court finds that other considerations weigh against permitting withdrawal in this case.

As noted above, where a defendant establishes a fair and just reason for withdrawal of his guilty plea, a court must consider (1) whether he asserts his innocence of the charge, (2) the amount of time that passed between the guilty plea and the motion to withdraw it, and (3) whether the government would be prejudiced by withdrawal. Id. (citing Nichols, 986 F.2d at 1201). As for the first factor, Defendant's only assertion of innocence pertains to his culpability under 18 U.S.C. § 2113(d) as it relates to Count 1. (See Def.'s Reply at 5–6.) He makes no assertion of innocence related to Counts 3, 4, 7, 10, or 12. Therefore, this factor weighs against permitting withdrawal.

As for the second factor, Defendant waited over six months to move for withdrawal of his guilty plea to Counts 3, 4, 7, 10, and 12. The issues Defendant raised in his November motion are all issues that he could have raised at the time he entered his plea in May. Defendant offers no explanation as to why he waited so long to bring his motion. Therefore, this factor weighs against permitting withdrawal.

As for the third factor, the Government argues that it will be prejudiced if Defendant is allowed to withdraw his guilty plea. (Govt.'s Resp. at 22.) The Government asserts that it was prepared to proceed to trial in May 2013 and that it may now be unable to secure witnesses for trial in this two-year-old case. (Id.) Thus, this factor, too, weighs against permitting withdrawal.

Therefore, even if Defendant had put forth a fair and just reason warranting withdrawal of his guilty plea to Counts 3, 4, 7, 10, and 12, the Court finds that the other

36

required considerations weigh against permitting him to withdraw the plea.  For these

reasons, Defendant's motion to withdraw his guilty plea to these Counts is denied.

## IV.    MOTION FOR RECUSAL

Defendant also seeks recusal of the undersigned.  Defendant cites no authority for his

motion; however, whether the motion is reviewed pursuant to 28 U.S.C. § 144, relating to

prejudice or bias of the assigned federal judge, or pursuant to 28 U.S.C. § 455, stating

justifications for disqualification for a justice, judge, or magistrate judge, the asserted

prejudice or bias must be personal, or extrajudicial, rather than official.  Liteky v. United

States, 510 U.S. 540, 548–50 (1994).  Accordingly, "a judge should not disqualify [herself]

solely on the basis of prior judicial rulings made during the course of the litigation."

Quachita Nat'l Bank v. Tosco Corp., 686 F.2d 1291, 1300 (8th Cir. 1982) (citations

omitted).  "Because a judge is presumed to be impartial, 'the party seeking disqualification

bears the substantial burden of proving otherwise.'"  United States v. Dehghani, 550 F.3d

716, 721 (8th Cir. 2008) (citation omitted).

Defendant has provided minimal detail regarding the basis for his motion for recusal.

After discussing the grounds for his motion to withdraw, Defendant states simply that he

seeks the undersigned's recusal "as a result of the aforementioned" and "given the

procedural history of this criminal matter."  (Def.'s Mot. at 14–15.)  He also claims that the

undersigned has "deep-seated antagonism" toward him and "deep-seated favoritism" toward

the Government that will increase as a result of his present motion, and he asserts that he

has submitted "compelling and verifiable evidence" of the undersigned "being biased and

impartial."[11]  (Id. at 15 (brackets and emphases omitted).)  However, the only specific

example provided by Defendant of the undersigned's alleged bias and partiality is a

comment regarding the timeliness of Defendant's motion to withdraw.  (See Def.'s Reply at

41.)

Defendant has not demonstrated any bias, prejudice, or partiality on the part of the

undersigned.  Rather, the "evidence" that Defendant points to is based on the official

proceedings and prior rulings in this case and is not sufficient to support his claim.

Accordingly, the Court denies Defendant's motion for recusal.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Defendant's Motion to Withdraw His Plea(s) Pursuant to Fed. R. Crim. P.
   11(d)(2)(B) and 11(d)(1) and Recusal of District Judge Susan Richard Nelson
   [Doc. Nos. 427, 428] is **DENIED**.

2. The date for sentencing will issue shortly.

Dated:  February 4, 2014                  s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge

---

[11]  The Court agrees that it has been impartial.  However, it will assume that
Defendant is alleging bias and partiality, rather than impartiality, for purposes of this
analysis.