UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

    Plaintiff,

v.

Sheikh Bilaal Muhammad Arafat,

    Defendant.

Case No. 12-cr-45 (SRN)

**ORDER**

---

Deidre Y. Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI-Sandstone, P.O. Box 1000, Sandstone, MN 55072, Pro Se Defendant

---

SUSAN RICHARD NELSON, U.S. District Judge

    This matter is before the Court on the following motions: (1) the Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 561] filed by Defendant[1] Sheikh Bilaal Muhammad Arafat ("Arafat"); (2) the Government's Motion to Dismiss Defendant's § 2255 Motion [Doc. No. 569]; and (3) Arafat's Pro Se Petition to Certify Issue for Interlocutory Appeal [Doc. No. 573]. For the reasons set forth below, Defendant's motions are denied, and the Government's motion is granted.

---

[1] Although Arafat is the petitioner in this motion, because the current filings are found in the underlying criminal docket, the Court refers to him as "Defendant" or "Arafat" throughout this ruling.

1

## I. BACKGROUND

In 2012, the Government charged Arafat with 13 counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). (Indictment [Doc. No. 4].) Subsequently, Arafat entered two guilty pleas. In April 2013, he pleaded guilty to Count 1, without a plea agreement. (Apr. 22, 2013 Minutes [Doc. No. 372].) In May 2013, he pleaded guilty to Counts 3, 4, 7, 10, and 12, pursuant to a plea agreement. (May 6, 2013 Minutes [Doc. No. 383].) He admitted further responsibility for the commission of 25 additional charged and uncharged bank robberies. (Plea Agmt. [Doc. No. 384] ¶¶ 1, 10; May 6, 2013 Hr'g Tr. [Doc. No. 395] at 19–20, 24–25.) The Government and Arafat contemplated a sentence of 168 months, in connection with the sentencing factors set forth in 18 U.S.C. § 3553(a). (Plea Agmt. ¶ 7; May 6, 2013 Hr'g Tr. at 28.)

In November 2013, Arafat unsuccessfully moved to withdraw his guilty pleas and sought the recusal of the undersigned judge. (*See* [Doc. Nos. 427, 428].) The Court denied his motions. (Feb. 4, 2014 Order ]Doc. No. 459].) Arafat appealed to the Eighth Circuit, which dismissed his appeal for lack of jurisdiction. (Pro Se Notice of Appeal [Doc. No. 463]; 8th Cir. J. [Doc. No. 472].)

In May 2014, the Court sentenced Arafat to an imprisonment term of 168 months and five years of supervised release. (Am. Crim. J. [Doc. No. 498] at 2–3.) Arafat filed a direct appeal, challenging the Court's acceptance of his guilty pleas and an alleged lack of legal and factual support for the guilty pleas. *United States v. Arafat*, 789 F.3d 839 (8th Cir. 2015). After the Eighth Circuit denied his appeal, *id.* at 847, Arafat petitioned for a

writ of certiorari, which the U.S. Supreme Court denied on October 19, 2015. *Arafat v. United States*, 136 S. Ct. 379 (2015).

Arafat filed the instant motion on September 30, 2019. He acknowledges that the statute of limitations runs from the date of final judgment, but argues that his motion is timely in light of recent authority from the U.S. Supreme Court. (Def.'s Mem. [Doc. No. 562] at 7.) Alternatively, he argues that the actual innocence exception to the statute of limitations applies. (*Id.* at 22.) On the merits, Arafat argues that a portion of the statute under which he was convicted, 18 U.S.C. § 2113(d), is unconstitutionally vague, (Def.'s Mem. at 7), and requests that the Court grant an evidentiary hearing, vacate his convictions under § 2113(d) as void for vagueness, and resentence him to a term of no more than 12 years. (*Id.* at 24.)

## II. DISCUSSION

### A. Motion to Certify Issue for Interlocutory Appeal

Before the Court addresses Arafat's § 2255 Petition, it first addresses his Motion to Certify Issue for Interlocutory Appeal. Arafat contends that the Court abused its discretion in granting the Government an out-of-time extension to file its Motion to Dismiss, without making specific findings that the Government had demonstrated excusable neglect.

On December 2, 2019, the Government requested leave to file an out-of-time response to Defendant's § 2255 Petition. (Gov't's Mot. for Out-of-Time Extension [Doc. No. 568]). At that time, the Government also filed the instant Motion to Dismiss Defendant's § 2255 Petition. The Government stated that due to unanticipated and emergent work duties and extensive travel, counsel had limited time in which to respond,

3

and apologized for the untimely submission. (*Id.* at 1–2.) Also on December 2, 2019, Defendant requested an extension of time in which to file a reply. (Pro Se Mot. for Extension of Time to File Reply [Doc. No. 567].) On December 10, 2019, the Court granted the parties' motions and accepted the Government's out-of-time filing. (Dec. 10, 2019 Order [Doc. No. 570] at 1.) The Court gave Defendant until January 13, 2020 to file a reply memorandum. (*Id.*)

On December 13, 2019, Defendant filed a Motion to Strike the Government's Motion to Dismiss [Doc. No. 571]. Among other things, due to his own emergent workload, Arafat requested a period of 45 days from the filing of the Government's § 2255 response in which to file a reply. (*Id.*) The Court ruled that it had previously accepted the Government's filing, and therefore denied the portion of Arafat's motion seeking to strike the Government's filing. (Dec. 17, 2019 Order [Doc. No. 572] at 2.) However, it granted Arafat's request for additional time, giving him until January 31, 2020 to file a reply. (*Id.* at 2.) He subsequently filed his § 2255 reply memorandum [Doc. No. 574] on January 31, 2020.

Arafat then filed the instant Pro Se Petition to Certify Issue for Interlocutory Appeal. Given that both parties requested extensions on similar bases due to the burdens of other legal work, neither extension prejudiced either party, and neither request was made in bad faith, and any delay in judicial proceedings was negligible, the Court's decisions to accept the Government's out-of-time filing, and to permit Defendant's requests for extensions, were proper and permissible under Federal Rule of Civil Procedure 6(b)(1)(B). *See Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (finding no abuse of

discretion in district court's ruling to extend time for a party to file its answer nearly seven months after the court partially granted motion to dismiss where the failure to file an answer was not the result of bad faith, nor did the opposing party suffer any prejudice from the delay).

Moreover, the question of whether the Court properly granted the out-of-time extension to the Government fails to meet the limited circumstances under which certification for an interlocutory appeal is available. *See* 28 U.S.C. § 1292(b) ("When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.") For all of the foregoing reasons, Defendant's Motion to Certify Issue for Interlocutory Appeal is denied.

### B. Habeas Petition Limitations Period

The Antiterrorism and Effective Death Penalty Act (AEDPA), provides that a prisoner in custody pursuant to a federal conviction may petition to vacate, set aside or correct the sentence, "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, such a petition is subject to a one-year limitations period. *Id.* § 2255(f). The one-year limitation period runs from the latest of—

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Arafat acknowledges that the date on which judgment became final, under § 2255(f)(1), was October 19, 2015—the day on which the U.S. Supreme Court denied his petition for a writ of certiorari. (Def.'s Mem. at 7.) Under § 2255(f)(1), Arafat had until October 19, 2016 to file a habeas petition. He concedes that the one-year deadline "has long since expired." (*Id.*) However, Arafat argues that his petition is nevertheless timely, based on § 2255(f)(3) and/or the actual innocence exception. (*Id.* at 7–8; 22–23.) The Court addresses these arguments below.

### 1. Newly Asserted, Retroactively Available Constitutional Right

Arafat argues that his petition is timely pursuant to § 2255(f)(3), which starts the clock on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" The Court disagrees.

Arafat relies on the following authority in support of his argument that the merits of

6

his Petition concern a constitutional right newly recognized by the Supreme Court, and made retroactively available to cases on collateral review: *United States v. Davis*, 139 S. Ct. 2319 (2019), *Sessions v. Dimaya*, 584 U.S.__, 138 S. Ct. 1204 (2018); *United States v. Mathis*, 136 S. Ct. 2243 (2016), and *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015). (Def.'s Mot. at 7.) However, the Supreme Court issued only one of these decisions, *Davis*, within a year prior to Arafat's September 30, 2019 habeas filing.[2] To the extent that Arafat relies on the other cases to start the clock, his Petition was filed too late. Accordingly, only the decision in *Davis* is relevant to determining whether § 2255(f)(3) applies.

*Davis* concerned a sentencing provision of the Armed Career Criminal Act ("ACCA"), applicable to persons convicted of unlawfully receiving, possessing, or transporting firearms. 139 S. Ct. at 2323–2336; *see generally* 18 U.S.C. §§ 922, 924. Among other things, the ACCA proscribes mandatory minimum sentences if the firearm offender also uses, carries, or possesses the firearm in furtherance of a federal crime of violence. 18 U.S.C. § 924(c)(1)(A). In *Davis,* the Supreme Court addressed the residual clause in 18 U.S.C. § 924(c)(3)(B), which defined a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Court found that provision was unconstitutionally vague. *Davis*, 139 S. Ct. at 2335–36.

Arafat appears to argue that the "crime of violence" language in the context of a

---

[2] The Supreme Court issued *Dimaya* on April 17, 2018. 138 S. Ct. at 1204.

felon-in-possession conviction is analogous to language in a provision of the federal bank robbery statute, 18 U.S.C. § 2113(d), under which he was convicted. (Def.'s Mem. at 5–22.) That provision states, "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or *puts in jeopardy* the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both." 18 U.S.C. § 2113(d) (emphasis added). He asserts that "puts in jeopardy" is a subjective inquiry in violation of due process protections and is unconstitutionally vague. (Def.'s Mem. at 5–6.)

Arafat's reliance on *Davis* is unavailing. He was neither charged nor convicted under the ACCA. Instead, he was charged, pleaded guilty, and convicted under § 2113. *Davis* is inapplicable. Accordingly, it does not constitute a newly recognized constitutional right, applicable to Arafat, that provides for a later limitations period under the AEDPA.

### 2. Actual Innocence

In the alternative, Arafat argues that any procedural default for failing to meet the limitations period should be excused based on his claim of actual innocence. (*Id.* at 22–23.)

In very limited circumstances, a claim of actual innocence can overcome the AEDPA's one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 394, 398–99 (2013). Arafat asserts that he has sufficiently shown and maintained his actual innocence to the offense of armed bank robbery under 18 U.S.C. § 2113(d). (Def.'s Mem. at 22–23.)

In *McQuiggin*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." 569 U.S. at 386. However, "tenable actual-innocence gateway pleas are rare," *id.*, and "the gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). This is a "demanding" standard, *id.*, and "a petitioner does not meet the threshold requirement unless he persuades the court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).

Arafat presents no new evidence of actual innocence. Rather, he appears to argue a variation of an earlier argument that he did not use a dangerous weapon because he used a toy gun during his bank robberies. Again, the provision of the statute concerning armed bank robbery criminalizes the conduct of a person who, in committing or attempting to commit bank robbery, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device[.]" 18 U.S.C. 2113(d). On direct appeal, the Eighth Circuit rejected the argument that because Arafat only admitted to using a toy gun, there was no legal or factual basis for his guilty plea under § 2113(d). *Arafat*, 789 F.3d at 847. The court noted that in *McLaughlin v. United States*, the Supreme Court held that an unloaded gun constitutes a "dangerous weapon" for purposes of § 2113(d), because "'the display of a gun instills fear in the average citizen,'" and consequently, "'creates an

9

immediate danger that a violent response will ensue.'" *Id.* (quoting 476 U.S. 16, 17–18 (1986)). The Eighth Circuit further observed that in *United States v. DeAngelo*, 13 F.3d 1228, 1234–35 (8th Cir. 1994), it found that the display of a starter pistol qualified as a dangerous weapon under § 2113(d), and the jury could have found that the defendant committed an assault if he displayed what looked to witnesses like a dangerous weapon during the robbery. *Arafat*, 789 F.3d at 847. Applying these precepts to Arafat, the court found an adequate factual and legal basis for his plea under § 2113(d), explaining,

> Arafat admitted that he robbed multiple banks while displaying a toy gun that he had altered to more closely resemble an actual gun, that he intended for his victims to believe that the toy gun was an actual gun, and that his victims believed that the toy gun was an actual gun. At the April 22 change-of-plea hearing, Arafat unequivocally acknowledged that he could be found guilty of armed bank robbery—even if the weapon used was a toy gun—by stating, "I clearly recognize I could be found guilty of [§ ] 2113(d)." Arafat also stated, "I did walk into the bank, I did use a toy gun that was perceived to be a real gun, and that perception caused another individual to fear for their life. . . . I accept responsibility. I did rob the bank." And at the May 6 change-of-plea hearing, Arafat admitted the factual basis and his responsibility for thirty-one armed bank robberies, each of which was committed using the same toy gun.

*Id.* (quoting April 22, 2013 Plea Hr'g Tr. [Doc. No. 394] at 5, 22–23.)

While the focus on direct appeal was whether a toy gun constitutes a "dangerous weapon," and Arafat's focus here is on whether brandishing such a weapon puts a "life in jeopardy," the arguments are closely related. But even setting aside his "life in jeopardy" argument, Arafat overlooks the disjunctive "or" in § 2113(d), which also includes assault. As Arafat acknowledged at the April 22, 2013 plea hearing, an "assault," does not require a physical act. (*See* April 22, 2013 Plea Hr'g Tr. at 5.) While § 2113 does not define assault, under common law, assault "may be committed without actually touching, striking,

10

or doing bodily harm on another," and "[a]ny intentional display of such force that would give a person reason to fear or expect immediate bodily harm, may constitute an 'assault.'" 2B Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 57:07 (6th ed.)

In addition to Arafat's sworn statements quoted by the Eighth Circuit, above, at the same plea hearing on April 22, 2013, he admitted that when he entered the Rolling Hills Bank and Trust in Brewster, Minnesota on January 3, 2012, he intended for the bank teller to believe that he was holding a firearm in order to threaten and intimidate her, and that the gun had the appearance of a real firearm. (April 22, 2013 Plea Hr'g Tr. at 20–21.) At the subsequent plea hearing on May 6, 2013, Arafat admitted the same facts for each bank robbery count for which he was convicted. (*See* May 6, 2013 Hr'g Tr. at 30–38.) The Court finds that all of this testimony sufficiently demonstrates assault under § 2113(d). Moreover, under either the assault prong or life-in-jeopardy prong of the statute, in the Plea Agreement, Arafat expressly admitted to the factual bases for the charges, which states,

> The defendant stipulates that the United States has sufficient evidence to prove beyond a reasonable doubt all the offenses in the Indictment in this case, and he agrees that he should be held responsible for such offenses. The defendant further stipulates that the charges being dismissed are being dismissed as part of the plea process, and not because they lack a factual basis.

(Plea Agmt. ¶ 3.)

The Court finds that no evidence meets the high bar necessary to show "actual innocence" of the convicted conduct under § 2113(d). To the contrary, all of the record evidence directly refutes any such claim. Accordingly, Arafat may not use the "actual innocence" gateway to overcome the statute of limitations.

For all of the foregoing reasons, the Court finds that Arafat's § 2255 Petition is untimely and is denied and the Government's Motion to Dismiss is granted.

**C. Evidentiary Hearing**

A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Defendant fails to meet the requirements identified in *Delgado*, 162 F.3d at 983, and the record here includes all the information necessary for the Court to rule. *Covey*, 377 F.3d at 909. Accordingly, no evidentiary hearing is required in this case.

**D. Certificate of Appealability**

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines

to issue a certificate of appealability.

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

1. Arafat's Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 561] is **DENIED** and is **DISMISSED WITH PREJUDICE** as untimely;

2. The Government's Motion to Dismiss Defendant's § 2255 Motion [Doc. No. 569] is **GRANTED**;

3. Arafat's Pro Se Petition to Certify Issue for Interlocutory Appeal [Doc. No. 573] is **DENIED**;

4. No certificate of appealability shall be issued; and

5. An evidentiary hearing is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 2, 2020                                      s/Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Court Judge