## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 12-cr-00045 (SRN/JJG) |
| Plaintiff, | |
| v. | **ORDER** |
| Sheikh Bilaal Muhammad Arafat, | |
| Defendant. | |

Deidre Y Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI-Sandstone, PO Box 1000, Sandstone, MN 55072, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the following pro se motions filed by Defendant Sheikh Bilaal Muhammad Arafat: (1) Motion for Modification of Restitution pursuant to 18 U.S.C. § 3664(k) (("Motion for Modification of Restitution" [Doc No. 579]); and (2) Motion and Letter Requests for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (("Motions for Release") [Doc. Nos. 582, 585, 586, 591, 595, 596, 597, 598, 599, 600, 601, 603,[1] 604, 605, 606, 607, 608, 609]).

---

[1]     In this Letter Request, Mr. Arafat requests only clarification as to the contents of certain documents that the government filed under seal in its opposition to his motion for compassionate release.  [Doc. No. 603.]

The Government filed responses in opposition to Mr. Arafat's Motion for Modification of Restitution and Motions for Release.  (Gov't's Opp'n Mot. Modification Restitution [Doc. No. 581]; Gov't's Opp'n Mot. Release [Doc. No. 587].)  Based on a review of the files, record, and proceedings herein, and for the following reasons, the Court denies Defendant's Motion for Modification of Restitution and Motions for Release.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The facts and lengthy procedural history of this case have been thoroughly and accurately stated in several Orders of this Court.  (*See, e.g*., Order of Mar. 2, 2020 [Doc. No. 576]; Order Deny. Defs.' Mot. to Withdraw Plea [Doc. No. 459].)  Therefore, this Court recites the facts here only to the extent necessary to contextualize and rule on the present motions.

On April 22, 2013, Mr. Arafat entered a guilty plea to one count of armed bank robbery.  (Plea Agmt. [Doc. No. 384].)  Subsequently, on May 6, 2013, he entered a guilty plea to five additional counts of armed bank robbery and admitted responsibility for 25 additional bank robberies occurring in this district between January 2011 and January 3, 2012.  (*Id*.)

On May 19, 2014, the Court sentenced Mr. Arafat to a 168-month term imprisonment.  (Am. Sentencing J. [Doc. No. 498].)  The Court also imposed criminal monetary penalties, including a special assessment in the amount of $ 600 and restitution in the amount of $ 108,786.71.  (*Id*. at 5.)

After the sentence was imposed, Mr. Arafat filed a direct appeal, challenging the Court's acceptance of his guilty pleas and alleging a lack of legal and factual support for

the guilty pleas.  *See United States v. Arafat*, 789 F.3d 839, 834-44 (8th Cir. 2015).  He did not appeal the term of his sentence.  *Id*.  After the Eighth Circuit denied his appeal, *id*. at 847, Mr. Arafat then petitioned for a writ of certiorari, which the U.S. Supreme Court denied on October 19, 2015.  *Arafat v. United States*, 136 S. Ct. 379 (2015); *see also* (Notice S. Ct. [Doc. No. 530].)  Thereafter, on September 30, 2019, Mr. Arafat filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  The Court denied his motion, finding that it was untimely.  (Mot. Vacate [Doc. No. 561]; Mem. Support [Doc. No. 562]; Order Den. Mot. Vacate [Doc. No. 576]; J., Mar. 2, 2020 [Doc. No. 577].)

Mr. Arafat now moves for the modification of his restitution payments pursuant to 18 U.S.C. § 3664(k) and seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  He is currently confined at FCI-Sandstone in Minnesota.  (Gov't's Opp'n Mot. Release at 8.)  He has a projected release date of December 8, 2023, but is eligible for home confinement on or after June 8, 2023.  (*Id*.)

## II.   DISCUSSION

### A.   Motion for Modification of Restitution

As noted above, as part of Mr. Arafat's sentence, he was ordered to pay a special assessment in the amount of $ 600 and restitution in the amount of $ 108,786.71. According to the Government, the records of the Clerk of Court reflects that Mr. Arafat made quarterly payments of $ 25 through the Bureau of Prisons ("BOP") between March 9, 2015, and March 11, 2019.  (Gov't's Opp'n Mot. Modification Restitution at 3.)  These payments were credited to his monetary obligations in this matter.  (*Id*.)  Mr. Arafat's three quarterly payments of $ 25 through the BOP between June 2019 and March 2020 were

credited to his older restitution obligation in United States District Court File Number 05-CR-45 (DSD/SRN) because once special assessments have been paid in criminal matters, the "Clerk of the Court applies payments to older restitution debts first." (*Id*. at 3-4.)

Mr. Arafat seeks relief under 18 U.S.C § 3664(k) from paying restitution for the next two quarterly payments. (Mot. Modification Restitution at 1.) Specifically, he argues that, because his economic situation has changed, he will be unable to make his "June or September [] 2020" financial responsibility payments. (*Id*. at 2.) He claims that his economic situation changed due to his wife's unemployment during the current COVID-19 pandemic and he can only minimally contribute to these payments (approximately $ 3.00/month on average) working at FCI-Sandstone. (*Id*.)

A court may modify a restitution order pursuant to 18 U.S.C. § 3664(k), which provides:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

(*Id*.) While this statute authorizes a district court to make a change in a defendant's restitution obligations, doing so requires a "material change in the defendant's economic

circumstances that might affect the defendant's ability to pay restitution." *United States v. Vanhorn,* 399 F.3d 884, 886 (8th Cir. 2006) (per curiam).

In opposition, the government argues that it is not "unsympathetic to the uncharted times during the COVID-19 pandemic." (Gov't's Opp'n Mot. Modification Restitution at 4.) However, it argues that Mr. Arafat has not exhausted his remedies within the BOP to account for this temporary change in his economic situation. It maintains that the BOP is working with inmates in a variety of ways during the COVID-19 pandemic. (*Id.*) (citing https://www.bop.gov/coronavirus/). Consequently, the Government argues that Mr. Arafat should first avail himself of his administrative remedies. (*Id.*)

The Court agrees, and finds that Mr. Arafat's alleged change in economic circumstances is temporary and can be remedied through the BOP's administrative process. *See, e.g.*, *Johnpoll v. Thornburgh*, 898 F.2d 849, 850-852 (2nd Cir. 1990) (finding that inmate must exhaust available administrative remedy procedures for grievance against collection procedures under the Inmate Financial Responsibility Program). Mr. Arafat provides no evidentiary support that he has tried the BOP's administrative process. Nor has he provided any evidentiary support demonstrating that his change in circumstances is otherwise material. For instance, he does not allege nor provide any documentation indicating whether his wife is receiving any unemployment benefits that could be used towards his quarterly payments. Thus, the Court finds it improper to utilize 18 U.S.C. § 3664(k) to currently suspend his payment schedule. For all of these reasons, Defendant's Motion for Modification of Restitution is denied.

**B.      Motions for Compassionate Release**

Mr. Arafat seeks release or home confinement in light of the risks associated with the COVID-19 pandemic.  He contends that the prison is providing inadequate protection for inmates and that his medical diagnoses place him at a greater risk should he contract COVID-19 according to the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC").  (Am. Mot. Release [Doc. No. 585] at 1-3.)  Specifically, he asserts that he has "slight obesity, and a compromised immune system" that manifested in a "recent, severe case of staph infection to his lower left leg."  (*Id*. at 1; *see also* ([Doc. No. 601] at 1-2).)  He further requests release based on his contention that he has a non-violent history; he is allegedly rehabilitated; his familial considerations during the COVID-19 pandemic warrant release; and he has a decreased risk of an infection from the virus if released from congregate living.  (*Id*.; ([Doc. No. 598] at 5-8); ([Doc. No. 606] at 1-2); ([Doc. No. 607] at 1-2).)  Mr. Arafat argues that these reasons present "extraordinary and compelling" reasons to grant his release for compassionate release.  (*Id*.)

The Government opposes Mr. Arafat's motion on three main grounds.  First, the Government argues that his motion should be denied because he has failed to exhaust his administrative remedies or alternatively that he failed to wait 30 days from the warden's receipt of a request for release before seeking judicial intervention.  (Gov't's Opp'n Mot. Release at 11-21.)  As a result, the Government argues that the Court lacks jurisdiction. (*Id*.)  Second, the Government contends that even if Mr. Arafat meets the administrative exhaustion requirement, his motion fails on the merits.  (*Id*. at 21–29.)  Third, the Government contends that the Court has no authority to order the BOP to place Mr.

Arafat in home confinement.[2]  (*Id*. at 26-28.)  Finally, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities. (*Id*. at 2-5.)

### 1.        The Law

A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.  *United States v. Kachina*, No. 15-cr-68 (ADM/FLN), 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2.  The compassionate release provision, as amended by the First Step Act, is such a statutory exception.  18 U.S.C. § 3582(c)(1)(A).

The First Step Act[3] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release.  *United States v. Stephenson*, No. 3:05-cr-511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020).  Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court.  *See* U.S. Sentencing Guidelines

---

[2]      The Government appears to misapprehend the nature of the relief requested by Mr. Arafat in making this argument.  While the Court is not authorized to order the BOP to place Defendant on home confinement, "if the standard set forth at 18 U.S.C. § 3582(c)(1)(A) is satisfied, the Court is authorized to reduce Defendant's prison sentence to time served and impose home detention or incarceration as a condition of supervised release."  *United States v. McIndoo*, --F. Supp. 3d--, 2020 WL 2201970, at *3 n.6 (W.D.N.Y. May 6, 2020).

[3]      The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id*. The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition

"that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(A).

A defendant's family circumstances, in similarly narrow instances, may also justify compassionate release.  The policy statement provides that a reduction is warranted by the "death or incapacitation of the caregiver" of defendant's "minor children" or the "incapacitation of the defendant's spouse or registered partner" when the defendant would be the only available caregiver for that spouse or partner.  *Id.* cmt. n.1(C); *see United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600 (D. Minn. Apr. 28, 2020).  The policy statement further provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [4]  *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a

---

[4]     Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, No. 17-cr-10328 (WGY), 2020 WL 2404858, at *2-3 (D. Mass. May 12, 2020) (collecting cases and finding that courts have "the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

9

compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, No. 13-cr-20653, 2020 WL 2557077, at *4-5 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations omitted)).

As the movant, Defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted)); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted)).

## 2.   Analysis

### a.   Exhaustion of Administrative Remedies

The Court first considers whether it has the authority to grant Defendant's motion. As explained above, by its plain language, the compassionate release statute provides that a court may only reduce a defendant's sentence after the defendant has "fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A). In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention.

The Government asserts that Mr. Arafat has not made an administrative compassionate release request with the BOP.  (Gov't's Opp'n Mot. Release at 11.)  He argues to the contrary in the Letter Requests that he filed after the Government submitted its opposition. ([Doc. Nos. 598, 600, 602, 605, 608-1.])  He further submits documentation that demonstrates the Warden denied his request for compassionate release in a letter dated April 8, 2020.  ([Doc. No. 598-1] at 1-3.)  The documentation also demonstrates that he submitted a compassionate release request to the Warden on May 20, 2020.  (*Id.* at 2-3.)

Although the record before the Court is unclear as to whether Mr. Arafat in fact submitted an administrative request before filing his present motions for release, the Court finds that more than 30 days have now lapsed from the receipt of Mr. Arafat's request for release by the warden, which is all the statute appears to require before he can proceed in district court. 18 U.S.C. § 3582(c)(1)(A).  Put differently, the BOP has been afforded more than 30 days to review Mr. Arafat's administrative request for compassionate release, therefore "satisfying the terms of the statute."  *See*, *e.g.*, *United States v. Olejniczak*, 2020 WL 2846591, at *3 (W.D.N.Y. June 2, 2020) (ruling on the merits of a compassionate release motion because thirty days elapsed from the warden's receipt of defendant's

administrative request for compassionate release); *United States v. Shabudin*, --F. Supp. 3d--, 2020 WL 2464751, at *1 (N.D. Cal. May 12, 2020) (ruling on the merits of a compassionate release motion when filed two days after request was submitted to the warden because thirty days had expired from inmate's administrative request).  Because Mr. Arafat appears to have exhausted his administrative remedies in this regard, the Court may therefore turn to the merits of his motion.

### b.  Compassionate Release Under § 3582(c)(1)(A)

The Court next considers whether release under these facts is warranted.  As explained above, the Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling" reasons under § 3582(c)(1)(A), and provides that an inmate's medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification.  *See* U.S.S.G. § 1B1.13 at cmt. n.1(A) (noting that the medical condition(s) must be "serious and advanced . . . with an end of life trajectory" or serious enough that they "substantially diminish the ability of the inmate to provide self-care" within the facility and "from which he or she is not expected to cover.").  Alternatively, an inmate's serious medical condition "in combination with" additional reasons may justify compassionate release.  *See* U.S.S.G. § 1B1.13 at cmt. n.1(A)-(D).

Here, Mr. Arafat argues that the COVID-19 pandemic, in combination with his medical conditions and familial situation, warrants compassionate release.  As for his medical conditions, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A).  *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218,

at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, Mr. Arafat fails to present extraordinary and compelling reasons for his release. Mr. Arafat, who is 57 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, Coronavirus Disease 2019: People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 7, 2020). Nonetheless, he alleges that he has slight obesity, and a compromised immune system, which he asserts make him more vulnerable to becoming seriously ill should he contract COVID-19. ([Doc. No. 585] at 1.) Although a compromised immune system may establish a particularized susceptibility to COVID-19, he offers no current documentation of any of his ongoing health concerns. *See United States v. Black*, No. 18-cr-646, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (denying motion for compassionate release, in part, because inmate offered no medical records substantiating his claim of treatment for high blood pressure and diabetes); *United*

*States v. Dickson*, No. 19-cr-251, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (finding that inmate failed to establish he is at a higher risk of contracting COVID-19 because he offered no medical records substantiating his asthma and respiratory issues); *Shamilov*, 2020 WL 2029600 at *2-3 (denying motion for compassionate release where inmate provided no documentation of underlying conditions) (citing *United States v. Gutierrez*, No. 05-cr-217 (RB), 2019 WL 1472320, at *2 (D.N.M Apr. 3, 2019)). The Court is therefore unable to find that Defendant is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his medical conditions.

Moreover, even assuming his underlying medical conditions exist, Mr. Arafat has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID-19. *See* BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed July 7, 2020). Thus, the facility appears to be largely successful at stopping any spread of the virus as of this writing.[5] Additionally, there is no indication that FCI-Sandstone will be unable to handle an outbreak at this time or otherwise accommodate Mr. Arafat's specific health concerns should he contract the virus.

---

[5]      Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19 status.jsp (last accessed July 7, 2020).

Regarding his family circumstances, while the Court is sympathetic to Mr. Arafat's concerns about caring for his children during the COVID-19 pandemic, his request does not fall within the Commission's policy statement. He does not seek release because he is the only available person to care for a minor child or spouse. Rather, he seeks release to assist his spouse in helping his two children with their academics and general upbringing. The Court therefore finds that he cannot demonstrate that his family circumstances warrant compassionate release. *See Shamilov*, 2020 WL 2029600, at *3 (denying compassionate release, in part, because alleged family circumstances did not warrant release when inmate did not assert he was the only available caretaker for a minor child or spouse).

Accordingly, the Court finds that neither Mr. Arafat's medical conditions nor his family circumstances warrant compassionate release. Nor does the Court find that other compelling circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553 factors to Defendant. There is no change in circumstances that supports the reduction of his sentence.

Mr. Arafat has also not established that he does not present a danger upon immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). He committed 31 bank robberies in roughly one year. While he argues that these crimes were non-violent, the Court finds that this is not an accurate characterization of his prior offenses. ([Doc. No. 598] at 5-8.) In fact, the Vice President of Premier Bank described his robberies as waging a "12-month reign of terror . . . leaving many victims with permanent psychological damage." (Gov't's Opp'n Mot. Release at 9.) And, while he used a fake gun for the commission of his crimes, his victims were not aware that it was not real and his intentional display of a violent weapon put his

victims in great fear of injury or death.  Taking the true circumstances of the prior robberies into account, the Court finds that Mr. Arafat fails to show that he poses no danger to the community.

Accordingly, for all of the reasons stated above, Defendant's Motions for Release are denied.

### III.   ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's Pro Se Motion for Modification of Restitution [Doc. No. 579] is **DENIED**.

2.   Defendant's Pro Se Motions for Release [Doc. Nos. 582, 585, 586, 591, 595, 596, 597, 598, 599, 600, 601, 603, 604, 605, 606, 607, 608, 609] are **DENIED**.

Dated:   July 7, 2020                               s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge

16