UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sheikh Bilaal Muhammad Arafat,<br><br>Defendant. | Case No. 12-cr-00045 (SRN/JJG)<br><br><br>**ORDER** |

Deidre Y. Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI-Sandstone, PO Box 1000, Sandstone, MN 55072, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Pro Se Motion for Reconsideration [Doc. No. 612] filed by Defendant Sheikh Bilaal Muhammad Arafat, along with three letters and exhibits submitted by Arafat in support of his motion [Doc. Nos. 613, 614, 615]. Arafat seeks reconsideration of the Court's July 7, 2020 Order [Doc. No. 610]. In that order, the Court denied his request to modify restitution and denied his request for compassionate release. In the instant motion, Arafat argues that he has established a material change necessary to modify his restitution, he has met his burden of establishing that he would not pose a danger to the community if compassionate release were granted, and he has

1

demonstrated that extraordinary and compelling reasons warrant compassionate release. (Def.'s Mot. for Reconsid. at 1–6.)  For the reasons set forth below, his motion is denied.

## I. BACKGROUND

The Court incorporates by reference the factual and procedural background of this matter, set forth in the July 7 Order.

### A. July 7 Order

In the July 7 Order, the Court found that Arafat had not exhausted his administrative remedies within the BOP with respect to his request for modification of restitution. (July 7 Order at 4.)  Specifically, he requested that the Court issue a temporary order to "suspend[]" and "exclude [him]" from making his June and September 2020 quarterly payments of $25 due to a temporary change in his financial circumstances. (Def.' Mot. to Modify Rest. [Doc. No. 579] at 1–2.)  In denying his motion, the Court noted that Arafat's change in financial circumstances was temporary, and could be remedied through the BOP's administrative process, without resorting to 18 U.S.C. § 3664(k) to suspend his payment schedule. (July 7 Order at 4.)

As to Arafat's request for compassionate release, the Court observed that his age did not make him particularly susceptible to an increased risk of COVID-19 complications. (*Id.* at 13.)  The Court also noted even assuming the existence of Arafat's reported medical conditions, he failed to establish a particularized risk of contracting the virus at FCI-Sandstone. (*Id.* at 14.)  At the time of the July 7 Order, there was only one reported case of COVID-19 at that facility, and there was no indication that FCI-Sandstone would be unable to manage an outbreak or accommodate Arafat's health issues if he were to contract

the virus.  (*Id.*)

In addition, while the Court was sympathetic to Arafat's concerns about his wife's ability to care for and supervise the distance learning of their school-age children, these circumstances did not fall within the Sentencing Commission's policy statement regarding compassionate release.  (*Id*. at 15.)

Also, the Court found that no other compelling circumstances warranted Mr. Arafat's release.  (*Id.*)  The Court observed that it had applied the § 3553 factors to Mr. Arafat when fashioning an appropriate sentence, and no change in circumstances supported a reduction of that sentence.  (*Id.*)

Finally, the Court found that Arafat failed to establish that he posed no danger to the community upon release.  (*Id.*)  The Court noted that Arafat had committed 31 bank robberies in approximately one year, and while he used a fake gun to commit the robberies, his victims, who experienced fear of injury or death, were unaware that the gun was fake.  (*Id.* at 15–16.)

## II.     DISCUSSION

### A.  Legal Standard

Local Rule 7.1(j) of this Court requires a party seeking reconsideration to first obtain permission to file such a motion. D. Minn. L.R. 7.1(j). A party may receive permission only by showing "compelling circumstances." *Id*. Motions for reconsideration serve the limited purpose of "correct[ing] manifest errors of law or fact or . . . present[ing] newly discovered evidence." *Hagerman v. Yukon Energy Corp*., 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co*., 827 F.2d 246, 251 (7th Cir. 1987)).

### A. Modification of Restitution

Arafat argues that the BOP's administrative remedies do not authorize the agency to modify court-ordered restitution, and therefore the Court erred in requiring him to pursue the BOP's administrative remedies. (Def.'s Mot. for Reconsid. at 1–2.) He notes that while the administrative process may be used to address a grievance with collection procedures, (*id.*) (citing *Johnpoll v. Thornburgh*, 898 F.2d 849, 850–52 (2d Cir. 1990)), it may not be used to modify the amount of restitution or payment structure. (*Id.*)

The Court notes that the law on this issue is somewhat unclear. On one hand, when opposing a scheduled payment amount under the Inmate Financial Responsibility Program, inmates must bring any challenge "under [Section] 2241 after all administrative remedies have been exhausted." *United States v. Diggs*, 578 F.3d 318, 320 (5th Cir. 2009); *see also Allen v. Rickard*, No. 1:13-25022, 2014 WL 4929418, at *2 (S.D. W. Va. Sept. 30, 2014) ("[A] petitioner cannot used Section 3664(k) to modify or suspend payments made through the IFRP.") On the other hand, when "challenging a court-ordered repayment schedule . . . suit could be brought under [Section] 3664(k)." *Diggs*, 578 F.3d at 319-320.

In any event, the Court need not decide this issue because even if Arafat could pursue his motion under Section 3664(k), Arafat has not established that any change in his economic circumstances is "material[,]" as required by the statute. 28 U.S.C. § 3664(k). He argues that due to COVID-19, his wife, who provides him with additional income, is unemployed, and the BOP has not been providing inmate pay during the last three months. (Def.'s Mot. for Reconsid. at 2.) But Arafat also notes that his wife may receive unemployment payments. (*Id.*) Based on this limited information, the Court is not

4

persuaded that reconsideration of his motion to modify restitution by "suspending" or "exclude[ing]" two quarterly payments of $25 in June and September 2020, is warranted. Accordingly, his request for reconsideration in this regard is denied.

**B.      Compassionate Release**

As noted, Mr. Arafat also seeks reconsideration of the Court's denial of his motion for compassionate release, arguing that the Court erred in finding that he poses a danger to the community if released, and in finding that no extraordinary or compelling circumstances warrant his compassionate release. (*Id*. at 2–3; Aug. 6, 2020 Letter [Doc. No. 614] at 1–2.)

As to whether he poses a danger to the community, Arafat argues that the Court overlooked a DOJ Violence Risk and Recidivism Assessment that placed him at "low" risk, as well as nine years of exemplary prison behavior and conduct, including the completion of recidivism reduction programming. (Def.'s Mot. for Reconsid. at 2.) Arafat contends that this evidence is "incongruent" with the Court's finding that, if released, he poses a danger to the community. (*Id.*) As to the offense conduct underlying his current convictions, he reiterates that he used a toy gun in the commission of his crimes, there were no customers in the banks, and no one was physically harmed. (*Id.* at 2–3.) Finally, he notes that he has served over 70% of his sentence. (*Id.*)

While it is commendable that Arafat has exhibited good behavior in prison, completed recidivism training, and been placed at "low" risk of reoffending, as he states, the Court finds no basis for reconsideration of its prior ruling. As noted, Arafat committed 31 robberies in roughly one year, and while he portrays them as "non-violent," his victims

were unaware that the gun he brandished was not real. His intentional display of that weapon put his victims in great fear of injury or death. (July 7 Order at 15–16.)

As to Arafat's medical conditions, the Court ruled that even assuming the existence of his underlying medical conditions, he failed to demonstrate a particularized risk of contracting COVID-19. (*Id.* at 14.) The Court noted at that time, FCI-Sandstone had reported only one case of COVID-19, and there was no indication that the facility would be unable to handle an outbreak or otherwise accommodate Arafat's specific health concerns if he were to contract COVID-19. (*Id.*) Along with the instant motion for reconsideration, Arafat submitted a letter on August 7, 2020, stating that on July 31, 2020, the BOP confirmed that one staff member at FCI-Sandstone had contracted COVID-19. (Aug. 7, 2020 Letter [Doc. No. 613].)

At present, the BOP reports that four inmates and no staff members have active cases of COVID-19. *See* BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last visited September 8, 2020). While this represents a slight increase in active cases from July 7, this slight increase does not constitute new evidence that changes the Court's prior ruling. Again, Arafat fails to demonstrate a particularized risk of contracting the virus, even assuming the existence of his medical conditions, and there is no reason to believe that FCI-Sandstone would be unable to handle an outbreak or otherwise provide medical care to Arafat.

Finally, while the Court appreciates Arafat's concern about his children's remote learning, (*see* Def.'s Reconsid. Mot. at 4–5; Aug. 24, 2020 Letter [Doc. No. 615] at 1–2), this is not an extraordinary and compelling reason warranting his release. As the Court

6

previously stated, a defendant's family situation, in narrow circumstances, may warrant the defendant's compassionate release. (July 7 Order at 9.) Pursuant to U.S Sentencing Guidelines § 1B1.13, the Sentencing Commission's policy statement on the narrow circumstances that might give rise to a reduction in sentence identifies only the "death or incapacitation of the caregiver" of a defendant's "minor children," or the "incapacitation of the defendant's spouse or registered partner" when the defendant would be the only available caregiver for that spouse or partner. U.S.S.G. § 1B1.13, cmt. n.1(C); *see United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600 (D. Minn. Apr. 28, 2020). These facts are not present here, as the Court previously found. (July 7 Order at 15.) Nor does the Court find that "other extraordinary and compelling reasons" warrant Arafat's release. U.S.S.G. § 1B1.13, cmt. n.1(D).

For all of the foregoing reasons, the Court finds that Arafat has not met the standard for reconsideration.

### III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motion for Reconsideration [Doc. No. 612] is **DENIED**.


Dated:  September 8, 2020                             s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge