## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sheikh Bilaal Muhammad Arafat,<br><br>Defendant. | Case No. 12-cr-45 (SRN/JJG)<br><br><br>**ORDER** |

Deirdre Y. Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI Sandstone, K-2 Unit, P.O. Box 1000, Sandstone, MN 55072, Pro Se

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Sheikh Bilaal Muhammad Arafat's Pro Se Motion to Modify Restitution [Doc. No. 675] and his Pro Se Motion to Amend the Motion to Modify Restitution [Doc. No. 707].[1] For the reasons set forth below, his motions are denied.

## I.     BACKGROUND

Arafat is serving a 168-month term of imprisonment at FCI-Sandstone in Sandstone, Minnesota, and his sentence includes an order to pay restitution in the amount of

---

[1]      Also pending before the Court are Arafat's motions and supporting documents related to his requests for relief under 18 U.S.C. § 3582(c) (*see, e.g.*, Doc. Nos. 702, 708, 711–12, 714–15, 728–29), which the Court will address in a separate order.

$108,786.71.  (Am. Sentencing J. [Doc. No. 498] at 2, 5.)  While incarcerated, Arafat must make restitution payments as follows:  "If the defendant is working UNICOR, he must make monthly payments of at least 50 percent of his earnings. If the defendant is not working UNICOR, he must make quarterly payments of at least $25.  It is recommended the defendant participate in the Inmate Financial Responsibility Program while incarcerated." (*Id*. at 6.)

In March 2020, Arafat filed a motion to modify restitution [Doc. No. 579] due to changes in his financial circumstances because of the COVID-19 pandemic.  The Court denied his  motion, finding that his situation was temporary and could be remedied through the administrative process of the Bureau of Prisons ("BOP").  (July 7, 2020 Order [Doc. No. 610] at 3–5.)

In July 2020, Arafat sought reconsideration of his motion, arguing that while the BOP's administrative process may be used to address a grievance with collection procedures, it may not be used to modify the amount of restitution or payment structure. (Def.'s Mot. for Reconsid. [Doc. No. 612] at 1–2.)  But the Court found that even if Arafat sought to modify the restitution payment schedule under § 3664(k), he failed to demonstrate that any change in his economic circumstances was "material," as the statute requires, because he indicated that his wife had funds available.  (Sept. 8, 2020 Order at 4–5.)  Accordingly, the Court denied his motion.  (*Id*.)

In his current motion, Arafat clarifies that he does not seek to modify the amount of payment, but seeks to modify the payment schedule due to a material change in his financial condition, pursuant to § 3664(k).  (Def.'s Mot. to Modify Restitution at 2.)   Arafat states

that initially, he only anticipated the need for modification of restitution for two quarters, but because he has received no inmate pay due to the pandemic, he requires a schedule modification at this time.  (*Id*. at 3.)  Arafat also contends that his wife is neither obliged nor currently able to assist with his restitution payments.  (*Id*. at 4.)  Arafat states that he first raised the issue of a modification with his "Unit Team" within the BOP, and the request was  "immediately dismissed" on the grounds that the BOP has no authority to change court-ordered payment schedules.  (*Id*. at 3–4.)  Accordingly, he requests that the Court suspend the scheduled quarterly payments due in March 2021, (*id*. at 4), and June and September 2021.  (Def.'s Mot. to Amend at 1.)

In order to address Arafat's motion, the Court directed the Government to file an affidavit or declaration from the BOP addressing the following issues:  (1) whether, in light of the COVID-19 pandemic, inmates at FCI-Sandstone are currently working, and in what capacity; (2) how the BOP is handling the restitution payments of inmates who are not receiving work income; (3) what is Arafat's current and anticipated work status, including whether it is UNICOR or non-UNICOR; (4) whether Arafat participates in the Inmate Financial Responsibility Program; and (5) any other information applicable to Arafat's Motion to Modify Restitution.  (March 2, 2021 Order [Doc. No. 696] at 4–5.)

The Government filed the Declaration of Heather Kensy and supporting exhibits in response to the Court's request.  Ms. Kensy is a Unit Manager at FCI-Sandstone, where she is familiar with the BOP's policies and procedures, including financial programs such as the Inmate Financial Responsibility Program ("IFRP").  (Kensy Decl. [Doc. No. 701] ¶¶ 1–2.)  As reflected in the BOP's Program Statement P5380.08, when an inmate has a

3

financial obligation, BOP staff help the inmate develop a financial plan, and monitor the inmate's progress in meeting the obligation.  (*Id.*, Ex. A (BOP Program Stmt. P5380.08) at 4.)  BOP staff review an inmate's financial obligations  and develop a plan to meet those obligations in the following order of priority:  (1) special assessments imposed under 18 U.S.C. § 3013; (2) court-ordered restitution; (3) fines and court costs; (4) state or local court obligations; and (5) other federal government obligations.  (*Id.* at 4–6.)  The "Unit Manager" is the "determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay."  (*Id.* at 7.)  Such determinations are made on a case-by-case basis.  (*Id.*)  An inmate is responsible for "making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff."  (*Id.*)

IFRP payments may be made from institution resources (i.e., inmate performance pay) or from non-institution (community) resources.  (*Id.*)  An inmate's Unit Team calculates IFRP payments as follows:

> In developing an inmate's financial plan, the Unit Team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments. . . .  The Unit Team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account.  This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).

(*Id.*)

Inmates who participate in the program are placed in "Participates" status.  (Kensy Decl. ¶ 8, Ex. A at 13.)  If inmates are unable to participate due to medical or psychological restrictions or the inability to secure a work detail, they are placed in "Exempt TMP" status,

4

which indicates a temporary exemption from participating in IFRP.  (*Id*.)  If inmates refuse to participate or refuse to make full payments under an established financial plan, they are placed in "Refuse" status.  (*Id*.)  Refusal to participate may result in various consequences such as notice of refusal being sent to the U.S. Parole Commission, the denial of furloughs, and the denial of performance pay above the maintenance level, bonus pay, or vacation pay.  (Kensy Decl. ¶ 9 & Ex. A at 10–11.)

Since March 13, 2020, FCI-Sandstone has been under modified operations due to the COVID-19 pandemic.  (*Id*. ¶ 10.)  Depending on the status of COVID-19 in the facility and the inmate's work detail assignment, an inmate may have continued working during this period of modified operations.  (*Id*.)

If an inmate failed to meet a scheduled IFRP payment during the COVID-19 pandemic, or any other time, the Unit Team would consider whether the inmate should be placed into "Exempt TMP" status, on a case-by-case basis.  (*Id*. ¶ 11.)  BOP staff may consider all deposits to an inmate's account, regardless of the source, for purposes of an IFRP payment.  (*Id*.)  The lack of a work detail assignment does not automatically result in placement in "Exempt TMP" status.  (*Id*.)  Staff consider other factors such as the total deposits into the inmate's account and the nature of any withdrawals, including "whether they are deliberately spending their Trust Fund account down to avoid the scheduled IFRP payment."  (*Id*.)  The BOP also notes that since April 2020, inmate telephone calls have been free of charge, although the Unit Team still considers the telephone exclusion when determining IFRP payments.  (*Id*.)

BOP records indicate that currently, Arafat has financial obligations arising under two restitution orders.[2]  (*Id.* ¶ 12 & Ex. B (Inmate Financial Data).)  On September 12, 2017, Arafat agreed to make quarterly payments of $25 toward his outstanding restitution obligations.  (*Id.* ¶ 13 & Ex. C (Arafat Fin. Plan).)  Arafat was previously assigned to the Compound Work Detail until April 15, 2020, when he became "unassigned."  (*Id.* ¶ 14.)  He remained unassigned until he resumed Compound Work Detail on February 19, 2021, and also became a Chapel Orderly on February 25, 2021.  (*Id.*)  He does not work in UNICOR.  (*Id.*)

During the COVID-19 pandemic, Arafat has made his quarterly payments of $25, with payments in March, June, September, and December 2020, and March 2021.  (*Id.* ¶ 15, Ex. E (Inmate Fin. Obligs. as of 3/11/21).)  The BOP has found that Arafat's $25 quarterly IFRP payments remain appropriate, even though he lacked a work assignment for the majority of 2020.  (*Id.* ¶ 16.)  As of March 11, 2021, Arafat had $684.84 in deposits in the previous six months, resulting in $184.84 to be considered for an IFRP payment.  (*Id.* ¶ 16, Ex. F (Inmate Inquiry).)

Arafat filed a response to the Kensy Declaration, seeking an order directing the Government "to show cause why it shouldn't be held in contempt for not complying" with the Court's March 2, 2021 Order.  (Def.'s Resp. [Doc. No. 705] at 1.)  Specifically, he contends that the Kensy Declaration was "largely unresponsive" to the first two issues it

---

[2]     Arafat has completed payment on one criminal assessment, and another criminal assessment has expired.  (Kensy Decl. ¶ 12, Ex. B (Inmate Financial Data).)

was directed to address:  "(1) Whether, in light of the COVID-19 pandemic, inmates are currently working, and in what capacity; and (2) How the BOP is handling the restitution payments of inmates who are not receiving work income."  (*Id*. at 1–2.)  In addition, he faults the BOP for not referencing his rate of pay and the number of hours that he worked in February 2021—information that he contends would be helpful for the Court's analysis of whether a material change in his economic circumstances warrants the modification of his restitution payments.  (*Id.* at 2.)  Finally, Arafat expresses his concern that, as a result of his motion, the BOP may retaliate against him by sending him to another BOP facility, change his current housing, or take other, unspecified retaliatory action.  (*Id*. at 3.)

## II.    DISCUSSION

When a prisoner is "challenging a court-ordered repayment schedule . . . suit could be brought under [18 U.S.C. §] 3664(k)."  *United States v. Diggs*, 578 F.3d 318-320 (5th Cir. 2009). Section 3664(k) provides as follows:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3664(k).

The Court finds that Arafat has not presented a material change in his economic circumstances warranting the modification of his $25 quarterly restitution payments.  The

BOP has submitted information in response to the Court's request that demonstrates Arafat's financial ability to meet his restitution obligations.  He is employed, and as of March 2021, had $184.84 in his account to be considered for IFRP payments.  (Kensy Decl. ¶¶ 14, 16.)

The Court also denies Arafat's request to require the Government to "show cause why it shouldn't be held in contempt for not complying" with the Court's March 2, 2021 Order.  (Def.'s Resp. at 1.)  The Kensy Declaration responded to the Court's request for information.  Regarding the question of whether inmates are currently working at FCI-Sandstone, Ms. Kensy stated that, depending on the status of COVID-19 in the facility and inmates' work detail assignments, inmates may have continued working during the period of modified operations.  (Kensy Decl. ¶ 10.)  She further noted that Arafat himself resumed working in February 2021.  (*Id*. ¶ 14.)  As to the BOP's response to the question of how it is handling the restitution payments of inmates who are not receiving work income, Ms. Kensy stated that the "Unit Team would consider on a case-by-case basis whether the inmate should be placed into "Exempt TMP" status."  (*Id*. ¶ 11.)  She observed that a lack of work detail does not automatically result in placement in "Exempt TMP" status, and that the Unit Team would also consider the amount of total deposits and withdrawals from the inmate's account.  (*Id*.)  Moreover, as to the inmate in question, Ms. Kensy addressed how the BOP handled Arafat's restitution payments during the period of time when he was not working.  (*Id*. ¶¶ 15–16.)

For all of the foregoing reasons, the Court finds there is no material change in Arafat's economic circumstances that warrants the modification of Arafat's restitution obligations.  His motions are therefore denied.

## III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Pro Se Motion to Modify Restitution [Doc. No. 675] is **DENIED**; and

2.  Defendant's Pro Se Motion to Amend the Motion to Modify Restitution [Doc. No. 707] is **DENIED**.

Dated: August 17, 2021                              s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge