UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sheikh Bilaal Muhammad Arafat,<br><br>Defendant. | Case No. 12-cr-00045 (SRN/JJG)<br><br>**ORDER** |

Deidre Y. Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI-Sandstone, K-2 Unit, PO Box 1000, Sandstone, MN 55072, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the following pro se motions filed by Defendant Sheikh Bilaal Muhammad Arafat, along with several letters and exhibits (*see, e.g.*, Doc. Nos. 708, 711–12, 715, 728–29): (1) Motion for Reconsideration [Doc. No. 702]; (2) Motion to Modify Sentence of Imprisonment [1] [Doc. No. 711]; and (3) Motion to

---

[1] Although Arafat captioned Docket Number 711 as "Memorandum in Support to Modify Sentence of Imprisonment," it was docketed as a separate motion, and the Court construes it as such. Arafat raises new arguments in this filing. In addition, his earlier pending motion filed at Docket Number 702 is captioned as both a motion and memorandum in support of the motion, which suggests that Docket Number 711 is not a memorandum in support of Docket Number 702.

1

Supplement the Record [Doc. No. 714]. For the reasons set forth below, Arafat's motions are denied.

## I.  BACKGROUND

Arafat is serving a 168-month term of imprisonment at FCI-Sandstone in Sandstone, Minnesota following his 2014 conviction on multiple counts of armed bank robbery. (Am. Sentencing J. [Doc. No. 498].) He has a proposed release date of December 8, 2023. Fed. Bureau of Prisons ("BOP"), *Federal Inmates, Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed Aug. 23, 2021).

Arafat's Motion for Reconsideration and his Motion to Modify Sentence of Imprisonment are his fifth and sixth motions, respectively, since April 2020, to seek relief from imprisonment under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), based in part on the COVID-19 pandemic. The Court incorporates by reference the factual and procedural background of this matter, set forth in numerous orders. (*See* July 7, 2020 Order [Doc. No. 610]; Sept. 8, 2020 Order [Doc. No. 616]; Nov. 24, 2020 Order [Doc. No. 652]; Mar. 5, 2021 Order [Doc. No. 699].) Briefly, the Court recounts the procedural history of Arafat's § 3582(c) motions.

On April 29, 2020, Arafat moved for a reduction in sentence pursuant to § 3582(c) based on his risk of severe COVID-19 infection in light of his age, slight obesity, and compromised immune system [Doc. Nos. 582; 585–86]. On July 7, 2020, the Court denied Arafat's motion.

On July 20, 2020, Arafat sought reconsideration of his § 3582(c) motion [Doc. No. 612]. On September 8, 2020, the Court denied his request for reconsideration.

On September 17, 2020, Arafat filed a third § 3582(c) motion [Doc. No. 618]. He sought release after the CDC reclassified certain factors, including obesity (BMI greater than 30%), that increase the risk of severe injury or death for those infected with COVID-19. On November 24, 2020, the Court denied his motion. Arafat appealed this Court's decision to the Eighth Circuit Court of Appeals, which affirmed the Court's ruling on December 9, 2020 [Doc. No. 665].

On February 22, 2021, Arafat filed a fourth § 3582(c) motion [Doc. No. 695]. On March 5, 2021, the Court denied his motion.

On March 25, 2021, Arafat filed his fifth § 3582(c) motion—and one of the instant motions here—seeking reconsideration of the Court's March 5, 2021 Order. (Def.'s Mot. for Reconsid. at 1.)

On May 10, 2021, Arafat filed his sixth motion—also one of the pending motions— seeking to modify his sentence under § 3582(c), due to the "extraordinary and compelling circumstances" caused by COVID-19 and the BOP's modified operations. (Def.'s Mot. to Modify at 1.) Finally, apparently in support of his sixth motion, Arafat moves to supplement the record with a declaration from a fellow prisoner incarcerated at FCI-Sandstone. (Def.'s Mot. to Supp. at 1.)

The Government opposes Arafat's motions for three reasons: (1) Arafat has failed to establish extraordinary and compelling reasons that warrant a sentence reduction; (2) he still poses a danger to the safety of the community; and (3) the § 3553(a) sentencing factors weigh in favor of his continued confinement. (Gov't's Opp'n [Doc. No. 726] at 5–8.)

In Arafat's Reply to his Motion to Modify Sentence of Imprisonment, he clarifies

3

that he does not seek "immediate release," but rather, a reduction in the remaining term of his imprisonment by 14 months.[2] (Reply [Doc. No. 728] at 2.) He argues that other courts have considered pandemic prison conditions as a reason supporting relief under § 3582(c), and asserts that the § 3553(a) sentencing factors "favor a [slight] sentence reduction." (*Id*. at 1–10) (alteration in original).

## II. DISCUSSION

### A. Motion for Reconsideration

Local Rule 7.1(j) of this Court requires a party seeking reconsideration to first obtain permission to file such a motion. D. Minn. L.R. 7.1(j). A party may receive permission only by showing "compelling circumstances." *Id*. Motions for reconsideration serve the limited purpose of "correct[ing] manifest errors of law or fact or . . . present[ing] newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015).

Arafat asks the Court to reconsider its March 5, 2021 ruling in which it denied his motion for a sentence reduction under § 3582(c). (Def.'s Mot. for Reconsid. at 1.) In his motion, Arafat had argued that relief was warranted due to the risk of COVID-19

---

[2]   The Court notes that in his Reply, Arafat requests a 14-month reduction in sentence, (Reply at 2), while in his initial motion/memorandum, he requests a 13-month reduction in his sentence. (Def.'s Mot. to Modify at 12.)

4

reinfection, the emergence of virus variants, potential long-term health effects, family circumstances, and his post-sentencing conduct and rehabilitation. (Def.'s Feb. 22, 2021 Mem. Supp. Mot. to Reduce Sentence [Doc. No. 695] at 1–2.)

### 1. No Appointed Counsel

As an initial matter, Arafat first states that the lack of appointed counsel for the purpose of filing a compassionate release motion constitutes a "travesty of justice." (Def.'s Mot. for Reconsid. at 1–2.) Arafat acknowledges that pursuant to an administrative order, the U.S. District Court for the District of Minnesota refers all pro se § 3582(c)(1) compassionate release motions to the Federal Defender's Office for initial analysis. (*Id*.) But he argues that "after performing a 'deep-dive,' most Federal Defender's analyses conclude no 'reasonable basis' exists in support of said motions, with the Federal Defender's Office informing the court that they will not be submitting any additional filings in support of the respective pro se litigant's § 3582 motion." (*Id*. at 2.) Arafat contends that this effectively signals to the Court that the pro se prisoner's motion is without merit. (*Id.*)

To the extent that this constitutes an "argument" in support of his motion, it provides no basis for reconsideration of the Court's March 5, 2021 Order, as it does not purport to correct "manifest errors of law or fact," nor does it present newly discovered evidence. *Hagerman*, 839 F.2d at 414. The March 5, 2021 Order did not address the appointment of counsel, as Arafat had filed no such motion. Even on the merits, there is no authority for the proposition that a defendant has a constitutional right to appointment of counsel in the prosecution of a § 3582(c)(1) motion. In fact, legal authority supports the opposite

5

conclusion, as the Supreme Court has found no right to counsel beyond the direct appeal of a criminal conviction, *Coleman v. Thompson*, 501 U.S. 722, 756 (1991), and the Eighth Circuit has held in analogous sentence modification proceedings under § 3582(c)(2) that there is no right to appointed counsel, nor does the right exist under the Criminal Justice Act, 18 U.S.C. § 3006A(c). *United States v. Harris*, 568 F.3d 666, 668–69 (8th Cir. 2009). The Court further observes that Arafat has capably represented himself in this matter for many years, and has successfully assisted other prisoners in their criminal proceedings. (*See* Def.'s Mot. for Reconsid. at 2.)

### 2. Post-Sentence Rehabilitation and "Just Punishment"

Arafat argues that in the March 5, 2021 Order, the Court failed to consider his post-sentence rehabilitation and whether he received a "just punishment." (*Id*. at 2–6.) The Court finds no manifest error of law or fact, nor any new evidence that warrants reconsideration. The March 5, 2021 Order noted "[Arafat's] post-sentencing conduct, his 'good works' in offering paralegal support to other inmates, and his rehabilitation." (Mar. 5, 2021 Order at 15.) However, the Court concluded that "[n]otwithstanding these commendable efforts and accomplishments," it could not overlook his criminal history to conclude that releasing him "would adequately address the seriousness of the charges of his conviction, promote respect for the law, or provide a just punishment." (*Id*.) While Arafat disagrees with the Court's conclusions, he provides no valid grounds for reconsideration on this basis.

### 3. Danger to the Community

Arafat also argues that the Court erred in denying his prior motion because he would not pose a danger to the community if he were to be released. (Def.'s Mot. for Reconsid. at 7–8.) He cites strong family support, his willingness to participate in re-entry court, his advanced age, his "low" Department of Justice PATTERN Assessment Score, and the fact that he used a toy gun while committing the bank robberies. (*Id.*)

Again, while the Court is encouraged by Arafat's rehabilitation efforts and by his strong family support, as reflected in the March 5, 2021 Order, (Mar. 5, 2021 Order at 15), it continues to find that a sentence reduction would not adequately address the seriousness of the charges of his conviction. Arafat has repeatedly argued that the use of a toy gun during the commission of his robberies weighs against a finding of dangerousness, but the Court disagrees. As the Court explained in its July 7, 2020 Order denying his first motion for compassionate release:

> Mr. Arafat has also not established that he does not present a danger upon immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). He committed 31 bank robberies in roughly one year. While he argues that these crimes were non-violent, the Court finds that this is not an accurate characterization of his prior offenses. ([Doc. No. 598] at 5-8.) In fact, the Vice President of Premier Bank described his robberies as waging a "12-month reign of terror . . . leaving many victims with permanent psychological damage." (Gov't's Opp'n Mot. Release [Doc. No. 587] at 9.) And, while he used a fake gun for the commission of his crimes, his victims were not aware that it was not real and his intentional display of a violent weapon put his victims in great fear of injury or death. Taking the true circumstances of the prior robberies into account, the Court finds that Mr. Arafat fails to show that he poses no danger to the community.

(July 7, 2020 Order at 15–16.) The Court finds no grounds for reconsideration on this basis.

7

### 4. "Unduly Harsh" Period of Incarceration

Finally, Arafat argues that reconsideration is warranted because the Court erred by "refusing" to address his "[advanced] claim" that an unduly harsh period of incarceration supports a reduction in sentence. (Def.'s Mot. for Reconsid. at 6) (alteration in original) (citing Doc. No. 694).

The Court assumes that Arafat's "[advanced] claim" was made in his February 22, 2021 "Memorandum in Support of Motion to Modify Sentence of Imprisonment" [Doc. No. 695]. In the subsection of his memorandum captioned "Exposure to COVID-19," under the general section "Extraordinary and Compelling Circumstances," Arafat presented specific facts about the COVID-19 outbreak at FCI-Sandstone, provided statements about the prevalence of COVID-19 outbreaks and litigation at prisons generally, and discussed public concerns about multiple variants of the virus. (Def.'s Feb. 22, 2021 Mem. at 6–7.) In the midst of this paragraph, in a single sentence, Arafat stated, "Arafat believes the Court, at the time of his sentencing, [never] considered being at an increased risk of exposure to a deadly virus as part of his punishment." (*Id*. at 7.)

Given Arafat's passing reference to this "argument"—which he presented in the form of a statement, but which he now characterizes as an "advanced claim"—it is not surprising that the Court did not address it in detail. In his Motion for Reconsideration, Arafat reframes this statement as an argument for a reduction in sentence based on an "unduly harsh period of incarceration," to which he now devotes two pages in his Motion for Reconsideration, (Def.'s Mot. for Reconsid. at 6–7), and an entirely new Motion to

8

Modify Sentence of Imprisonment, along with a Motion to Supplement the Record, which the Court addresses below.

The fleshed-out argument that Arafat now presents was not before the Court in Arafat's February 22, 2021 memorandum. It cannot form the basis for a motion for reconsideration. *SPV-LS, LLC v. Transam. Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) (noting that a motion for reconsideration may not be used to identify facts or raise legal arguments that could have been, but were not, raised at the time the relevant motion was pending). Moreover, the March 5, 2021 Order fully addressed Arafat's concerns about whether "Exposure to COVID-19" constituted an extraordinary and compelling reason warranting his requested relief. The Court detailed the guiding standard by which it evaluated such "extraordinary and compelling reasons," (Mar. 5, 2021 Order at 10–15), and noted that district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases); *United States v. Ramirez*, 459 F. Supp. 3d 333, 340 (D. Mass. 2020); *United States v. Shamilov,* No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2018). The Court found that Arafat failed to meet these standards. (Mar. 5, 2021 Order at 13.) In addition, as of March 5, 2021, the Court found a low risk of infection at FCI-Sandstone. (*Id.*) (noting, at the time of the order, zero inmates and six staff were testing positive for the virus). The Court also fully considered whether compassionate release would provide a "just punishment." (*Id.*

9

at 15.)  Accordingly, the Court finds that it committed no error in its March 5, 2021 Order, and reconsideration is not warranted.

In sum, there is no basis for reconsideration of the March 5, 2021 Order, and Defendant's Motion for Reconsideration is therefore denied.

### B. Motion to Modify Sentence of Imprisonment

Also before the Court are Defendant's Motion to Modify Sentence of Imprisonment ("Motion to Modify") and his Motion to Supplement the Record with the Declaration of Scott Faul.

#### 1. Parties' Arguments

In his Motion to Modify, Arafat argues that pursuant to § 3582(c)(1)(A)(i), extraordinary and compelling reasons warrant the modification of his sentence based on the BOP's modified operations during the pandemic, which have resulted in: (1) a "prolonged period of incarceration in restrictive housing resulting in an atypical and significant hardship"; and (2) "the detrimental effects of restrictive housing." (Def.'s Mot. to Modify at 6–8.) Arafat requests that the Court "reduc[e] his sentence to reflect 2-days for every day served in modified operations at FCI-Sandstone, commencing no earlier than March 1, 2020 and continuing through present," or, alternatively, to "reduce Arafat's sentence by 13-months which is an equivalent to the foregoing or any other lesser term the court deems appropriate." (*Id*. at 11–12.) In support of Arafat's motion, he also submits the Faul Declaration.  Mr. Faul, a fellow inmate at FCI-Sandstone, states that based on his experience as a prisoner in the BOP, the BOP's modified operations currently in effect have caused inmates to incur a significant hardship. (Faul Decl. [Doc. No. 715] ¶¶ 3–5.)

In opposition to Arafat's Motion to Modify, the Government acknowledges that during this pandemic, "institution life is atypical for all inmates housed at BOP correctional facilities," but the "BOP is using the best measures possible to ensure the safety and health of all." (Gov't's Opp'n at 5–9.)) The BOP's modified operations in response to the pandemic apply to all inmates, the Government notes, and Arafat's situation is not unique. (*Id*. at 7.) Accordingly, it argues that the BOP's modified operations do not constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). (*Id*.) In addition, the Government asserts that the § 3553 sentencing factors weigh against granting relief, and Arafat still poses a significant danger to the community. (*Id*. at 8.)

In reply, in addition to Arafat's arguments regarding prison conditions, he asserts that consideration of the § 3553 factors favor a "slight" sentence reduction. (Reply at 5.) Arafat states that he has served the vast majority of his sentence, has no disciplinary record, and has taken full advantage of the opportunities for rehabilitation in prison. (*Id.* at 6–7.)

### 2. Analysis

Numerous district courts, including in this district, have found that the following three issues must be considered in evaluating an application for a reduction in sentence: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, No. 13-cr-20653, 2020 WL 2557077, at *4 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340 (RJD), 2019

11

WL 3428504, at *2 (E.D.N.Y. July 30, 2019)); *see also United States v. Edison*, No. 12-cr-225 (DWF), 2020 WL 3871447, at *2–3 (D. Minn. July 9, 2020). As the movant, the defendant bears the "burden to show he is entitled to a sentence reduction." *United States v. Walker*, No. 11-cr-381 (SRN/HB), 2020 WL 4194677, at *3 (D. Minn. June 26, 2020) (internal citations omitted).

### a. Extraordinary and Compelling Reasons

As noted, pursuant to the First Step Act, a court may reduce a prisoner's term of imprisonment, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . extraordinary and compelling reasons warrant such a reduction[.]"[3] 18 U.S.C. § 3582(c)(1)(A).

While § 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that might warrant a reduction in sentence, Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Sentencing Guidelines, the Sentencing Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family

---

[3]   A defendant may only bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). The Government concedes that Arafat has exhausted his administrative remedies, (Gov't's Opp'n at 5), and the Court agrees. (*See* Def.'s Ex. [Doc. No. 712].)

12

circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). The policy statement also provides a catch-all, or "other," provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(D)).

Arafat seeks relief under the Guidelines' catch-all or "other" provision, U.S.S.G. § 1B1.13 cmt. n.1(D), arguing that the atypical and restrictive conditions of imprisonment during the BOP's modified operations fall within this provision, and constitute an extraordinary and compelling reason for a reduction in sentence. The Court respectfully disagrees.

Indeed, as the Government acknowledges, the BOP has enacted modified operations since March 2020 in response to the COVID-19 pandemic, in order to "maintain the safety of [its] staff, inmates, visitors, and communities." BOP, *BOP Modified Operations* (updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp. Some of the modified operations include limited movement to maximize social distancing, with exceptions for the commissary, laundry, showers, telephone calls, and, when necessary, medical and mental health care. *Id*. The Court acknowledges the significant impact that modified operations have had on inmates' lives. However, if the BOP had not effected its modified operations, the outcome in its facilities could have resulted in much greater illness and death.

While prison life is atypical during this period, the BOP's modified operations place the same restrictions on each inmate. To find that the effects of modified operations

13

constitute an extraordinary and compelling reason for a sentence reduction would undermine the BOP's comprehensive anti-COVID-19 measures, and undercut the specific criteria used to determine individual inmates' eligibility for sentence reductions. As the Government observes, "Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with the 'atypical confinement' resulting from BOP response to protect the safety and health of inmates." (Gov't's Opp'n at 7.) While the Guidelines provide a catch-all or "other" provision for relief, they otherwise narrowly define "extraordinary and compelling reasons" based on medical conditions, age, and certain family circumstances. U.S.S.G. § 1B1.13(1)(A)-(D). And within those limited categories, courts have required an individualized basis for relief. As noted earlier, with respect to medical conditions posing a greater risk of severe illness from COVID-19, district courts have required that an inmate demonstrate both a particularized medical risk and a particularized risk of contracting the disease at the inmate's prison facility. *Feiling*, 453 F. Supp. 3d at 841 *Ramirez*, 459 F. Supp. 3d at 340; *Shamilov*, 2020 WL 2029600, at *3.

Arafat contends that decisions from other courts support his position that modified prison operations constitute an extraordinary and compelling reason for a sentence reduction. (Reply at 2–5.) However, the Court is unaware of any binding authority from the Eighth Circuit or the U.S. Supreme Court standing for the proposition that the BOP's

14

modified prison operations alone constitute an extraordinary and compelling reason under § 3582(c)(1)(A).[4]

Belatedly, Arafat submitted a letter dated July 6, 2021 [Doc. No. 729], which references and appears to supplement his "sentence reduction motion which is currently under review." In the letter, Arafat notes his "continued fear of contracting and developing a serious injury" due to COVID-19, and states that, as of July 6, two inmates at FCI-Sandstone had tested positive for COVID-19. (July 6, 2019 Letter at 1.) It is unclear whether Arafat intends to argue for the first time in connection with the instant motion that he has a medical condition that constitutes an extraordinary and compelling reason warranting a reduction in sentence, or whether he merely provides the information in support of his general position that the BOP's modified operations constitute an extraordinary and compelling reason for a sentence reduction. In the case of the former, he fails to identify or provide support for a medical condition, nor has he demonstrated a

---

[4] Many of the cases on which Arafat relies are factually distinguishable. For example, in *United States v. Rodriguez*, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020), *United States v. Cruz*, No. 3:18-cr-81 (SRU), 2021 U.S. Dist. LEXIS 66485, at * 9–17 (D. Conn. Apr. 6, 2021), and *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *5–12 (S.D.N.Y. Feb. 1, 2021), the courts found extraordinary and compelling reasons for relief based on a combination of facts, not simply modified operations/harsh prison conditions caused by the pandemic. While Arafat relies on *United States v. King*, No. 17-cr-20332, 2020 U.S. Dist. LEXIS 165451, at *14–16 (E.D. Mich. Sept. 10, 2020), in which the court described various lockdown restrictions occasioned by the pandemic, the court did so in the context of analyzing the § 3553(a)(2)(A) sentencing goal of imposing a sufficient punishment, not as an "extraordinary and compelling reason" under § 3582(c). Rather, the court found that a combination of the prisoner's "heightened susceptibility to a severe outcome from COVID-19" and his "inability to practice self-care and follow CDC guidelines" amounted to extraordinary and compelling reasons supporting his release. *Id.* at *11.

particularized risk at FCI-Sandstone. *See* BOP, *COVID-19 Coronavirus Resource Page*, https://www.bop.gov/coronavirus/ (showing, as of August 23, 2021, zero inmates and one staff person with COVID-19 at FCI-Sandstone, and a vaccination rate among prisoners at the facility of approximately 75%). If he submits this information in support of his argument about modified prison operations, the Court finds that it fails to support his motion for all of the reasons discussed earlier.

Accordingly, the Court finds that the BOP's modified operations during the pandemic, even if resulting in an "unduly harsh period of incarceration," as Arafat asserts, (Def.'s Mot. to Modify at 1), are not an extraordinary and compelling reason for a reduction in Arafat's sentence under § 3582(c)(1)(A)(i).

b. **Section 3553 Sentencing Factors and Danger to the Community**

If Arafat had established extraordinary and compelling reasons for a reduction in sentence, the Court would still also consider whether the applicable sentencing factors under § 3553(a) weigh in favor of a sentence reduction, and whether he is a danger to the safety of the community. *White*, 2020 WL 2557077, at *4; *see also Edison*, 2020 WL 3871447, at *2–3. The Court finds that reducing Arafat's sentence under Guidelines standards would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *United States v. Andrews*, No. 18-cr-149 (SRN), 2020 WL 4500227, at *5 (D. Minn. Aug. 5, 2020) (citing 18 U.S.C. § 3553(a)).

In fashioning an appropriate sentence for Arafat, the Court fairly applied the § 3553(a) factors. These factors include: (1) the nature and circumstances of the offense

and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment; (3) the kinds of sentences available; and (4) the kinds of sentence and sentencing range established for the applicable category of offense and category of defendant, as set forth in the Guidelines.  18 U.S.C. § 3553(a)(1)–(4).

As stated on the record at Arafat's sentencing hearing, the Court considered the seriousness of the offense conduct, noting that Arafat had committed 31 bank robberies over the course of 12 months, terrorizing the victims by wielding what appeared to be a dangerous weapon, and causing them significant emotional trauma.  (Sentencing Tr. [Doc. No. 511] at 31.)

At sentencing, the Court also considered the need to deter Arafat from future criminal activity and to deter others from committing similar crimes.  (*Id*. at 30–31.)  The Court observed that Arafat had committed the bank robberies after having served a prior federal prison sentence, and despite a period of incarceration, had not been deterred from committing additional crimes.  (*Id*.)   Further, the Court found Arafat's conduct was of concern with regard to the protection of the public and the protection of his victims.  (*Id*. at 31–32.)  While the Court commends Arafat's rehabilitation efforts and accomplishments at FCI-Sandstone, (*see, e.g.*, Def.'s Second July 6, 2020 Letter [Doc. No. 732] at 2, 4), on balance, the Court's concerns remain.

Taking into consideration all of the § 3553(a) factors, the Court continues to find that the sentence imposed is just and fair under the totality of the circumstances and does not warrant a reduction. The Court would reach the same conclusion even if it had found that Arafat presented extraordinary and compelling reasons for compassionate release. *See United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020) (affirming denial of compassionate release where district assumed that the defendant's health and family circumstances constituted extraordinary and compelling reasons for compassionate release, but found the § 3553(a) factors present at sentencing had not changed).

In addition, Arafat has not established that he does not present a danger upon release. *See* 18 U.S.C. § 3582(c)(1)(A). He committed 31 bank robberies in roughly one year. While he argues that the offenses occurred over ten years ago, and steadfastly maintains that he "mitigated the seriousness of [the offenses] by employing a toy gun," (Reply at 9), the Court continues to find that this is not an accurate characterization of his conduct.

In sum, the Court finds that Arafat has failed to present extraordinary and compelling reasons warranting a reduction in sentence. Because the Court reaches this conclusion, it denies Arafat's Motion to Supplement the Record with the Faul Declaration. The Court also continues to find that the sentence imposed is sufficient, but not greater than necessary, to meet the sentencing factors under § 3553(a), and that Arafat has not established that he poses no danger to the community. Although he contends that the Court's "sole emphasis" is to "ensure that [he] receive an enhanced sentence" in order to mete out "the maximum punishment," (July 12, 2021 Letter [Doc. No. 732] at 1), Arafat is not serving a "prolonged" sentence, as he argues. (Def.'s Mot. to Modify at 1.) He is

18

serving the exact sentence contemplated by his plea agreement and properly imposed by the Court.[5] Accordingly, his motion for a sentence reduction is denied.

### III.  CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Reconsideration [Doc. No. 702] is **DENIED**;

2. Defendant's Motion to Modify Sentence of Imprisonment [Doc. No. 711] is **DENIED**; and

3. Defendant's Motion to Supplement the Record [Doc. No. 714] is **DENIED**.

Dated: August 23, 2021                                  s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge

.

---

[5] Arafat pleaded guilty to one count of armed bank robbery without the benefit of a plea agreement, (*see* Apr. 22, 2013 Hr'g Tr. [Doc. No. 394] at 28), and separately pleaded guilty to five additional counts of armed bank robbery pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (*See* May 6, 2013 Hr'g Tr. [Doc. No. 395] at 63–64.) The plea agreement contemplated a sentence of 168 months. (Plea Agmt. [Doc. No. 384] ¶ 7.)