UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sheikh Bilaal Muhammad Arafat,<br><br>Defendant. | Case No. 12-cr-45 (SRN/JJG)<br><br><br><br>**ORDER** |

Deirdre Y. Aanstad, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Sheikh Bilaal Muhammad Arafat, Reg. No. 12129-041, FCI Sandstone, K-2 Unit, P.O. Box 1000, Sandstone, MN 55072, Pro Se

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Sheikh Bilaal Muhammad Arafat's Pro Se Motion Requesting a Judicial Recommendation[1] [Doc. No. 735] and the Government's Motion for Leave to File Out of Time [Doc. No. 739]. For the reasons set forth below, the Court grants both motions.

**I.   BACKGROUND**

On April 22, 2013, Defendant pleaded guilty to one count of armed bank robbery (Plea Agmt. [Doc. No. 384].) On May 6, 2013, he also pleaded guilty to five additional

---

[1] Arafat has also filed supplemental letters [Doc. Nos. 738, 741, 742, 743] in support of his motion, which the Court has reviewed and considered.

counts of armed bank robbery, and admitted responsibility for 25 additional bank robberies that occurred in this district between January 2011 and January 2012. (*Id.*)

At sentencing on May 19, 2014, the Court sentenced Arafat to a 168-month term of imprisonment. (Am. Sentencing J. [Doc. No. 498].) Arafat is incarcerated at FCI-Sandstone in Sandstone, Minnesota, with a release date of December 22, 2023. *BOP, Inmate Locator*, https://www.bop.gov/inmateloc/ (last accessed Nov. 4, 2021).

Pursuant to 18 U.S.C. § 3624(c)(1), Arafat requests a recommendation from the Court to the Bureau of Prisons ("BOP") that he be placed in a Residential Reentry Center ("RRC") or halfway house for the maximum time allowable, i.e., 12 months. (Def.'s Mot. at 1.) He cites his demonstrated good works in prison, lack of a prison disciplinary record, history of full participation in programming and education opportunities in prison, and family and personal circumstances. (*Id.* at 1–2.) He notes that because of his criminal status, he will be unable to reside with his family in public housing and will be at risk of homelessness. (*Id.* 2.) A 12-month placement in an RRC will afford him a greater opportunity to find long-term housing, he argues. (*Id.*) In addition, Arafat states that because he may encounter difficulty finding employment at age 60, a 12-month RRC placement will assist those efforts, and will aid his general reentry into the lives of his family members and the community. (*Id.* at 2–3.)

The Government does not oppose Arafat's request.[2] (Gov't's Response [Doc. No. 740] at 4–5.) However, it also states that Arafat does not indicate whether he has first

---

[2] The Government has moved for permission to file its response out of time. (Gov't's Mot. to File Out of Time at 1.) Counsel for the Government has provided good cause for

exhausted his administrative remedies and he therefore fails to provide sufficient facts for the Court to make a recommendation. (*Id*.)

## II.  DISCUSSION

The Second Chance Act of 2007 increased the maximum amount of time permitted for inmates' pre-release RRC placement from 6 to 12 months. 18 U.S.C. § 3624(c)(6)(c). One of the goals of the Second Chance Act is to afford prisoners "a reasonable opportunity to adjust to and prepare for . . . re-entry . . . into the community." Pub. L. No. 110–199, § 251 (citing 18 U.S.C. § 3624(c)(1)). The BOP maintains exclusive statutory authority to determine a prisoner's placement based on criteria set forth in 18 U.S.C. § 3621(b). As relevant here, one such factor the BOP considers is "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." *Id*. § 3621(b)(4)(B). While sentencing courts may make such recommendations, they are non-binding on the BOP, given the BOP's complete discretion to determine prisoner placement. 18 U.S.C. § 3621(5).

The Court finds, consistent with prior rulings from this District, that it has the authority to make such a non-binding recommendation, separate and apart from sentencing, and without the need to amend the defendant's sentencing judgment to include the recommendation. *See, e.g., United States v. Booker*, No. 13-cr-3 (JRT/FLN), 2018 WL

---

its request. Its deadline overlapped with trial preparation in a matter set for trial within days of the filing deadline here, in addition to other caseload demands and deadlines that counsel faced in five other actions in this District. (*Id*. at 1–2.) Moreover, Arafat was not prejudiced by the Government's late response, which was filed shortly after the deadline. Accordingly, the Court grants the Government's motion.

2247261, at *2 (D. Minn. May 16, 2018) (finding court had authority to make a recommendation without modifying the sentence, but declining to do so in that case); *see also United States v. Ceballos*, 671 F.3d 852, 855–56 (9th Cir. 2011) (noting that a district court's recommendation to the BOP is simply a recommendation and not part of the sentence imposed by the district court); *United States v. Hernandez*, No. 3:12-cr-56-SLG-1, 2020 WL 7091539, at *1 (D. Alaska Dec. 4, 2020) (finding no requirement to amend sentencing judgment when recommending that inmate receive RRC placement for 12 months); *United States v. Ferguson*, No. 6:16-cr-00707-JMC-8, 2018 WL 5095149, at *2–3 (D. S.C. Oct. 19, 2018) (collecting cases on whether courts have authority to make such recommendations after sentencing, and siding with the "majority position" that while courts may not modify the original judgment on this basis, they may issue non-binding recommendations to the BOP).

As another judge in this District has observed, the cases in which sentencing courts have exercised their discretion to recommend RRC placement typically involve unique evidence and no opposition from the Government to the inmate's request. *Booker*, 2018 WL 2247261, at *2 (citing *United States v. Baker*, No. 3:01–94–01, 2013 WL 355867, at *1–2 (M.D. Ala. Jan. 29, 2013) (inmate completed GED, had two letters of recommendation from supervisors, and government did not oppose request); *United States v. Brattin*, No. 2:13–161, 2016 WL 4467897, at *1 (D. Nev. Aug. 23, 2016) (inmate had a "gate pass" that permitted him to leave the facility each day to conduct his job duties and government did not oppose request); *United States v. Bartels*, No. 12–20072, 2016 WL 6956796, at *1 (E.D. Mich. Nov. 29, 2016) (inmate had cooperated with prosecutors who

did not oppose request); *United States v. Qadri*, No. 06–00469, 2017 WL 1011663, at *1–2 (D. Haw. Mar. 15, 2017) (inmate had no prior criminal history, had been allowed to remain free on bond for 18 months during the pendency of his appeal, and government did not object to request)).

The facts here are similarly unique. To the Court's knowledge, Arafat has committed no disciplinary infractions during his approximately nine to ten years in prison. (*See* Def.'s Mot. for Reconsid. [Doc. No. 702] at 3.)[3] Moreover, while incarcerated, he has regularly availed himself of programs and training for self-improvement. (*Id*. at 3) (describing the completion of over 8,000 hours of prison programming). For instance, Arafat has obtained culinary and paralegal training in order to better equip himself for employment upon release, in addition to completing correspondence courses in a wide variety of areas including parenting, financial responsibility, and personal development. (Def.'s July 12, 2021 Letter [Doc. No. 732] at 1–2; Def.'s Mot. for Comp. Release, Ex. 2 (BOP Ed. Tr. [Doc. No. 618-3].) The Court further notes that Arafat has assisted other inmates in filing legal motions, some of which have resulted in a reduction in sentence or resentencing. (*See, e.g.*, Def.'s July 12, 2021 Letter at 2–4; Def.'s Aug. 20, 2021 Letter [Doc. No. 738] at 1.) Finally, as noted earlier, the Government does not oppose Arafat's motion.[4] (Gov't's Response at 5.)

---

[3] For purposes of evaluating the record here, the Court relies on the material that Arafat submits in support of the instant motion as well as his filings in support of prior motions.

[4] While the Government does not oppose Arafat's request on substantive grounds, it asserts that procedurally, he fails to state whether he has exhausted his administrative

While Arafat received a sentence that properly reflected the seriousness of his criminal conduct, the Court finds that RRC placement for the maximum time allowable would both "maintain the integrity of the Court's original sentence" and allow Arafat the opportunity to increase his chances for successful reentry into the community. *See United States v. Crawford*, No. 8:11CR353, 2020 WL 1074831, at *2 (D. Neb. Mar. 4, 2020) (finding that inmate's RRC placement would serve dual purpose of maintaining the integrity of original sentence and facilitating successful rehabilitation). Particularly in light of Arafat's age, family circumstances (including the need to find housing and assist his minor children), commendable efforts at rehabilitation, and lack of a prison disciplinary record, the Court finds that RRC placement for the maximum time allowable would best serve his successful reentry into the community. Accordingly, the Court respectfully recommends that Arafat receive 12 months of RRC placement prior to the expiration of his sentence.

In making this recommendation, the Court is mindful that it is nonbinding, and merely a recommendation. 18 U.S.C. § 3621(b) (stating that a request from the sentencing court "shall have no binding effect on the authority of the Bureau . . . to determine or

---

remedies prior to bringing this motion. (Gov't's Response at 4–5.) Arafat is seeking the Court's recommendation in advance of any BOP administrative action, however, and states that the Court's recommendation will assist him in fully developing the administrative record when his case manager makes a recommendation to the BOP. (Def.'s Sept. 23, 2021 Letter [Doc. No. 741] at 1; Def.'s Sept. 27, 2021 Letter [Doc. No. 742] at 1.) Because of this particular posture and because the Government does not oppose Arafat's request in substance, administrative exhaustion does not appear necessary at this time. However, if Arafat later seeks judicial relief from the BOP's RRC determination, he must exhaust his administrative remedies prior to seeking judicial relief. *See* 8 C.F.R. §§ 542.14–542.15.

change the place of imprisonment of that person."). The BOP is in the best position to evaluate whether and for long Arafat should be placed in an RRC, and the Court defers to its authority and expertise.

### III. CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

and the

1. Defendant's Pro Se Motion Requesting a Judicial Recommendation [Doc. No. 735] is **GRANTED**;

2. The Court respectfully recommends to the BOP that Defendant Arafat be placed at a residential reentry center/halfway house for the maximum time allowable;

3. The Clerk of Court is **DIRECTED** to forward this non-binding recommendation to the appropriate BOP officials;

4. The Clerk of Court is **DIRECTED** to send a copy of this order to the Warden of FCI-Sandstone, P.O. Box 1000, Sandstone, MN 55072. The Warden may provide a copy to Arafat's case manager at that facility; and

5. The Government's Motion for Leave to File Out of Time [Doc. No. 739] is **GRANTED**.

Dated: November 8, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge